536 P.2d 1077

**BLANTON AND COMPANY, an Arizona Corporation, Appellant,**

**v.**

**TRANSAMERICA TITLE INSURANCE COMPANY, as Trustee under Trust No. 6029–T, Appellee.**

**No. 2 CA–CIV 1781.**

Court of Appeals of Arizona, Division 2.

June 23, 1975.
Rehearing Denied July 24, 1975.
Review Denied Sept. 30, 1975.

---

Sidney L. Kain, P.C. by Sidney L. Kain, Tucson, for appellant.

Gerald B. Hirsch, Miller, Pitt & Feldman, P.C. by Jeffrey H. Schwartz and Stanley G. Feldman, Tucson, for appellee.

## OPINION

KRUCKER, Judge.

Did the trial court apply an incorrect measure of damages for trespass upon appellee's realty? That is the sole question involved in this appeal.

Transamerica Title Insurance Company, as trustee of a 340 acre tract of land, brought an action in trespass against Lawyers Title of Arizona, as trustee of an adjoining parcel of realty, for the destruction of a 2.5 acre portion of the tract and damages for the diminished value of the remainder. Transamerica also sought restitution for the reasonable value of 9700 cubic yards of fill removed from its property. Lawyers Title filed a third-party complaint against Blanton and Company, and both admitted liability for the trespass. The sole question, therefore, was the quantum of damages. The case was tried to the court, sitting without a jury, and appellee was awarded the sum of $67,300, which consisted of the following:

"(1) $1.50 per cubic yard for the intentional removal of 9,700 cubic yards of soil, or $14,550;

(2) $7,500 per acre for the destruction of 2½ acres from which the 9,700 cubic yards were removed, or $18,750;

(3) $100 per acre for the depreciation in value of the remaining 340 acres of the unitary tract from which the 9,700 cubic yards were removed, or $34,000.-00."

The trial court indicated in the judgment that Item (1) represented compensation for the value of the soil itself; Item (2) represented compensation for the destruction of approximately 2½ acres of land; and Item (3) represented compensation for the depreciation in value of the remaining acreage of the tract of which the 2½ acres formed a part.

The following picture depicts the respective locations of the subject properties. The 2.5 acre parcel, triangular in shape, fronts on Tangerine Road and is separated from the remainder of the tract by the Canada del Oro watercourse, which runs in a southwesterly direction through the southeastern corner of the tract. As pointed out by appellee, this parcel can best be described as a right-angle triangle bounded on the east by Tangerine Road, on the south by the Lawyers Title property, with the Canada del Oro forming the hypotenuse. Were it not for this 2.5 acre parcel,

Lawyers Title would have owned all of the triangular parcel of property bounded by the Canada del Oro, Tangerine Road and Lambert Lane.

The evidence in support of the judgment reflects the following. In order to obtain rezoning, Lawyers Title employed Blanton to construct a dike and to increase the height of its land by three feet. Blanton mistakenly directed the earth-moving contractor to obtain the required fill from the 2.5 acre parcel of Transamerica's property. Prior to the excavation, this parcel was approximately level with the adjoining property belonging to Lawyers Title, but after the earth removal, the height of Transamerica's property was decreased by three feet and the height of the Lawyers Title property was increased by three feet, thus creating a six-foot embankment between the properties. Additionally, the decreased height of Transamerica's property made it lower than the Canada del Oro and therefore subject to possible flooding. The old, stabilized stream bed of the channel had been destroyed—there had been no flooding during the 16 years prior to the excavation but there had been some flooding subsequent thereto. The change in grade of both properties, the building of a berm on the Lawyers Title property and the instability of the channel supported the conclusion that the 2.5 acre triangle was subject to increased runoff and flooding.

Although the Canada del Oro separated the small 2.5 acre parcel (which lay at the vortex of the 340 acre tract) from the remainder, Transamerica presented testimony to show that the economic value of the remainder was conditioned upon the ability to use the triangular parcel for commercial enterprise because of its frontage on Tangerine Road. Further, that the portion of Transamerica's property fronting on Tangerine Road north of the triangular parcel could not be used for commercial enterprise to service the area because of the topography. Commercial enterprise was necessary to develop the entire tract either for housing or mobile homes because, according to the developer, "You do have to supply the amenities to people that are moving into an area."

■■■ Generally, the measure of damages for a permanent injury to land is the difference in the market value of the land immediately before and immediately after the injury, but if the land may be restored to its original condition, the cost of restoration may be used as the measure of damages if it does not exceed the diminution in the market value of the land. Mikol v. Vlahopoulos, 86 Ariz. 93, 340 P.2d 1000 (1959); 75 Am.Jur.2d Trespass § 51; 22 Am.Jur.2d Damages § 144. Where there is a total destruction, the owner is entitled to recover the entire value of the property. Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92, 21 A.L.R.2d 373 (1950).

■ Transamerica presented evidence to show that merely replacing the soil which had been removed would not restore the 2.5 acre parcel to its original condition because the instability of the soil would render it unsuitable for construction of the contemplated buildings. When Transamerica had presented evidence of the market value measure of damages, Blanton had the burden of showing that the cost of restoration would be less. Mikol, supra. It did nothing more than show the cost of replacing the fill which had been removed. In the face of the evidence that replacement of the fill alone would not accomplish restoration, Blanton failed to meet its burden and therefore the trial court did not err in utilizing the market value measure of damages.

■ Nor do we find error in awarding $7500 per acre for the destruction of the 2.5 acre parcel. Evidence of a recent sale by Lawyers Title of approximately 13 acres in the vicinity of the subject parcel for the sum of approximately $91,000 was presented to the trial court. This parcel was also vacant, unimproved land. Appellant made no attempt to demonstrate any distinguishing characteristics between the 13 acre parcel and the subject parcel and we therefore decline to interfere with the trial court's acceptance of this value criterion.

 

We likewise find no error in awarding severance damages to Transamerica.[1] There was testimony at trial to demonstrate that the value of the remaining land was dependent upon the availability of the 2.5 acre parcel fronting on Tangerine Road for commercial enterprise. It was not the identity of uses of this 2.5 acre parcel and the remainder of the tract which was significant but the dependency of the value of the remainder upon its use together with the use of the 2.5 acre parcel. State ex rel. Morrison v. Jay Six Cattle Co., 88 Ariz. 97, 353 P.2d 185 (1960). The beneficial owners of the Transamerica property testified as to the special value of the remainder because of its unification with the 2.5 parcel. According to them, the remaining acreage was damaged in the amount of $200 to $300 per acre. The fact that the stream bed separated the 2.5 acre parcel from the remainder does not invalidate the conclusion that the 2.5 acre parcel was a part of the entire 340 acre tract. It may well be, however, that the location of the stream bed was a factor considered by the trial court in allowing only $100 per acre as severance damages.

We agree with appellant, however, that the totality of damages awarded was excessive. The purpose of damages is to make the injured party whole. It is true that a number of cases, under the particular circumstances and with reference to the particular form of action brought, have held or recognized that a proper measure of damages for the wrongful removal of earth from land was the value of the material taken. *See,* Annot., 1 A.L.R.3d 801 § 4. This restitutional measure of damages, however, may be appropriate when the land, a portion of which is severed, is comparatively worthless. Restatement of Torts § 929, Comments *C* and *E*. The reason for the restitutional measure of damages is to prevent unjust enrichment of the trespasser. Appellee was not entitled to have its cake and eat it too. Allowing appellee to recover the value of the soil in addition to the value of the land from which it was taken amounted to double compensation. This the law does not allow.

Accordingly, the judgment is reduced to $52,750.00 ($67,300.00 less $14,550.00) and as so modified is affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

---

1. We note parenthetically that the evidence reflects that the 2.5 acre triangular piece was a part of the entire 340 acre parcel and also that the portion of the tract lying in the stream bed could not be utilized. Appellant, however, neither pointed this out to the trial court nor on appeal and we therefore treat the mathematical computation as a mere *de minimis* error.