564 P.2d 127 (1977)
H. J. MILLER and Sondra Miller, Plaintiffs-Appellees,
v.
CARNATION COMPANY, a Delaware Corporation, and Albers Milling Company, a Delaware Corporation, a division thereof, d/b/a Brighton Egg Company, Defendants-Appellants.
No. 75-687.
Colorado Court of Appeals, Div. III.
February 3, 1977.
Rehearing Denied March 3, 1977.
Certiorari Denied May 16, 1977.
*129 Carrigan & Bragg, P. C., Douglas E. Bragg, Denver, for plaintiffs-appellees.
Davis, Graham & Stubbs, Robert H. Harry, L. Richard Freese, Denver, for defendants-appellants.
KELLY, Judge.
The Carnation Company appeals from an adverse judgment entered on a verdict in favor of the plaintiffs, Harry and Sondra Miller, for damages for trespass and nuisance arising out of the operation of the Brighton Egg Company, a poultry ranch owned by Carnation. The jury returned a special verdict awarding $101,748 in compensatory damages, which the trial court later remitted to $85,748. The jury also awarded $300,000 in exemplary damages. Carnation does not contest its liability on the claim, but asserts that both verdicts are excessive and that both are the result of passion and prejudice of the jury. The Millers cross-appeal, claiming pre-judgment interest on a portion of the award. We affirm the judgment against Carnation and reverse as to the denial of interest on the judgment.
In June 1966, the Millers purchased and moved into a home on property abutting Carnation's egg ranch. Shortly thereafter, the plaintiffs were besieged and their property was invaded by inordinate numbers of flies and rodents. The Millers' evidence demonstrated that Carnation's failure to remove chicken manure frequently and regularly from beneath its chicken houses provided these pests with ideal conditions for breeding. The flies existed in such numbers that the plaintiffs were deprived of the use and enjoyment of their property, and their influx damaged the Miller home and required increased maintenance.
Persistent complaints to the egg ranch management proved unavailing. Although Carnation began a program of extensive insecticide spraying of both its ranch and the Miller property, the spraying proved ineffective and no less an inconvenience than the flies. It was uncontroverted that the most effective method of abatement was regular and frequent removal of the manure. Nevertheless, Carnation did not intensify its cleaning efforts, and the Millers were continually harassed by flies and rodents.
The case has been twice tried. At the first trial, Carnation prevailed on its motion to dismiss after presentation of the plaintiffs' evidence. On appeal, this court reversed, finding that the Millers had established prima facie cases of nuisance and trespass and that there was evidence from which the jury might conclude that Carnation's conduct warranted an award of exemplary damages. Miller v. Carnation Co., 33 Colo.App. 62, 516 P.2d 661 (1973). At the conclusion of the second trial, the jury returned the verdicts above noted, and the plaintiffs agreed to a remittitur of $16,000 as ordered by the court.

I.
Regarding the compensatory damages, Carnation contends that submission of the *130 case on the theories of trespass and nuisance impermissibly allowed the jury to award double damages, and that the compensatory damages were excessive because they were the product of passion and prejudice. We disagree.
In its special verdict, the jury apportioned the damages, awarding $28,000 for deprivation of use and enjoyment of the property, evenly divided between Mr. and Mrs. Miller, and $72,000 for "annoyance, discomfort, inconvenience, and loss of ability to enjoy their lives," attributing $18,000 to Mr. Miller and $54,000 to Mrs. Miller.
Contrary to Carnation's contention, damages for loss of use and enjoyment of property, on the one hand, and for annoyance and discomfort, on the other hand, are not duplicative. The use and enjoyment of land is a proprietary interest, while annoyance and discomfort are personal, not proprietary, interests. In its remittitur the trial court correctly limited recovery for loss of use and enjoyment to the loss of rental value occasioned by the invasion. This distinction between the elements of damage leads to the rule that the owner of land who is not an occupant may recover only for the impaired value of his property, while an occupant-owner may recover both his proprietary and personal loss. Restatement of Torts, § 929, Comment g; Restatement (Second) of Torts, § 929, Comment e (Tent. Draft No. 19).
Asserting that it is impossible to tell under which theory the jury made its award, Carnation cites Mosher v. Schumm, 114 Colo. 441, 166 P.2d 559 (1946), and Ossman v. Mountain States Tel. & Tel. Co., 184 Colo. 360, 520 P.2d 738 (1974), as requiring a reversal of the verdict for compensatory damages. Such reliance is misplaced. These cases stand for the proposition that a general verdict must be stricken when a case is erroneously submitted to the jury on two claims for relief, one of which is clearly inappropriate. However, the present case was tried and submitted on the theories of trespass and nuisance, and the jury returned but one verdict on compensatory damages. Carnation does not argue that the Millers failed to establish a prima facie case on either claim, Miller v. Carnation, supra, and since the award embodied in the special verdict requested by Carnation is supportable under either theory, it must stand.
Carnation also maintains that the compensatory damages were excessive in that they were the result of the passion and prejudice of the jury, and further, that the jury could not award damages based on annual loss, since flies were a problem only during warm months. The first point is without merit, and the second misconstrues the nature of the damages awarded.
The trial court ordered remittitur on the element of loss of usage and enjoyment of the property, not because the jury verdict resulted from passion or prejudice, but because it exceeded the maximum awardable amount. The jury was not instructed on the method or limits for arriving at this figure, and the trial judge's order indicates that the court itself had not determined the proper method of computation prior to the hearing on the motion for a new trial. Thus, Carnation's argument that the excess can be attributed only to improper jury considerations is unsound. The trial court sits in a much better position than we to judge the propriety of a verdict. Here the trial court exercised its discretion in ordering the remittitur, and we are not able to say that the judgment as entered is grossly and manifestly excessive. Bohlender v. Oster, 165 Colo. 164, 439 P.2d 999 (1968). Neither is there substance to Carnation's additional contentions that the damage awards were predicated on other alleged irregularities occurring during the course of trial.
Carnation's argument that the unremitted damages for annoyance and discomfort were improperly predicated on an annual basis when they should have been limited to those months when flies were at their most numerous is not well taken. These damages, unlike those sustained in the loss of use and enjoyment of the property, are not suffered on a weekly, monthly, *131 or seasonal basis. They are absolute. It was within the discretion of the jury to determine when and how extensively the Millers suffered, and there is no indication in the record that their determination is without foundation. Bohlender v. Oster, supra.

II.
Carnation argues that the exemplary damage award was excessive and that the trial court would have, and should have, remitted the award or ordered a new trial. According to Carnation, the trial court refrained from striking the exemplary damage award because it failed to properly interpret our opinion in Miller v. Carnation, supra. In its order denying the motion for a new trial, the trial court noted its disagreement with the exemplary damage award. This alone, however, does not warrant a reversal of the verdict.
In overseeing the functions of the jury, it is not the place of the trial judge to sit as a thirteenth juror. Although the court may disagree with the verdict, the granting of a motion for a new trial is improper where the evidence palpably supports the verdict. In the face of conflicting evidence, the trial court may not substitute its view for that of the jury. Scott v. Matsuda, 127 Colo. 267, 255 P.2d 403 (1953). The plaintiffs were entitled to an instruction on exemplary damages, since there was evidence to support it. Miller v. Carnation Co., supra. The trial court's action in not setting aside the exemplary damage award, despite its disagreement with the verdict is, therefore, consistent with established principles, and the record does not justify reversal of its denial of a new trial.
Carnation further contends that the trial court failed to consider whether the damages were excessive, but we do not agree. This court is not warranted in assuming that the trial court ignored the question of excessiveness simply because it noted its disagreement with the jury but did not reduce the award. On the contrary, the trial court is presumed to have considered all properly raised objections. See Nelson v. Centennial Casualty Co., 130 Colo. 66, 273 P.2d 121 (1954).
We also reject Carnation's position that the amount of exemplary damages was excessive as a matter of law. While exemplary damages must bear a reasonable relationship to compensatory damages, Montgomery v. Tufford, 165 Colo. 18, 437 P.2d 36 (1968), no fixed mathematical formula exists to determine reasonableness. Wegner v. Rodeo Cowboys Ass'n., 290 F.Supp. 369 (D.Colo.1968), aff'd., 417 F.2d 881 (10th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 60 (1970). The relationship between exemplary and compensatory damages is but one test to be applied in assessing the excessiveness of the award. Of equal importance, the verdict must be sufficient to punish the defendant and effectively deter others in similar circumstances. Beebe v. Pierce, 185 Colo. 34, 521 P.2d 1263 (1974); see also Comment, Exemplary Damages in Colorado-Punitive or Puny?, 35 U.Colo.L.Rev. 394 (1963).
Here, there was sufficient evidence of Carnation's wanton and reckless disregard for the Millers' rights to justify submission of the question to the jury. Miller v. Carnation Co., supra; see also Barker v. Colorado Region-Sports Car Club of America, Inc., 35 Colo.App. 73, 532 P.2d 372 (1974). Carnation's financial status was a proper factor for jury consideration. The award was not so large in relation to the purposes underlying § 13-21-102, C.R.S. 1973, and in relation to Carnation's financial resources as to require reversal by this court.

III.
We need not reach the merits of Carnation's additional assignments. These were first raised in a document entitled "Supplement to Defendant's Motion for New Trial." Under a time extension granted by the trial court, Carnation was permitted to file its motion for new trial up to and including February 25, 1975. The motion for new trial was filed on that day, setting forth, inter alia, the contentions considered *132 in the first two parts of this opinion. However, additional assignments of error were raised in the so-called "Supplement to Defendant's Motion for New Trial" filed on April 25, 1975, three days before the court heard argument on the initial motion. Because these amendments to the motion for new trial in the "Supplemental Motion" were not filed within the time allowed for the motion for a new trial, and because Carnation did not seek an extension of time to file amendments to its motion either within the period previously granted by the trial court or at any time prior to the hearing on the motion, the "Supplemental Motion" is a nullity, and we are without jurisdiction to review its allegations. C.R.C.P. 59(b), and (f); see People v. McCollum, Colo.App., 555 P.2d 184 (1976). We have, however, considered the arguments raised by the "Supplemental Motion" and have concluded that each assignment presented in the "Supplemental Motion" is without merit.

IV.
Section 13-21-101, C.R.S.1973, provides that interest on personal injury damage awards may be recovered from the date the complaint is filed. The Millers contend that they are entitled to the benefits of this provision on that portion of the award relating to annoyance and discomfort. The trial court's denial of interest on this portion of the award from the date of the complaint is error.
An injury is personal when it impairs the well-being or the mental or physical health of the victim. For example, a claim for loss of consortium is a personal injury within the meaning of the materially identical precursor to § 13-21-101, C.R.S. 1973. American Insurance Co. v. Naylor, 103 Colo. 461, 87 P.2d 260 (1939). In contrast, an injury is not personal when inflicted on property. Therefore, interest on the award for annoyance and discomfort is recoverable from the date of the filing of the Millers' complaint.
The judgment is affirmed with respect to Carnation's liability and the damages awarded in the jury's verdict, as remitted. The order denying interest requested by the plaintiffs is reversed, and the cause is remanded with directions to the trial court to enter judgment on the award for annoyance and discomfort, together with interest thereon at the rate of six per cent per annum from the date of the filing of the original complaint in this action to the date of the entry of judgment pursuant to this remand.
BERMAN and STERNBERG, JJ., concur.