The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF WELD, State of Colorado, Petitioner-Defendant,

v.

John P. SLOVEK, Sr., John P. Slovek, Jr., Gary W. Slovek and Michael S. Slovek, Respondents-Plaintiffs.

No. 84SC414.

Supreme Court of Colorado, En Banc.

Aug. 25, 1986.

Thomas O. David, Weld Co. Atty., Lee D. Morrison, Bruce T. Barker, Asst. Co. Attys., Greeley, for petitioner-defendant.

Anderson, Calder & Sandman, P.C., Gary L. Calder, Aurora, for respondents-plaintiffs.

LOHR, Justice.

We granted certiorari to review the measure of damages utilized by the Colorado Court of Appeals for negligent injury to real property in *Slovek v. Board of County Commissioners*, 697 P.2d 781 (Colo.App. 1984), and to determine whether the award of costs against the defendant Board of County Commissioners of Weld County (county) in that case was permissible. After a trial to the court, the Weld County District Court awarded judgment for $15,550 in damages, plus costs, in favor of the plaintiff property owners, the Sloveks, and against the county based upon the county's negligence in allowing river water to enter a gravel pit on its property, overflow from that pit, and inundate much of the Sloveks' property. The trial court assessed damages based upon the difference between the market values of the Sloveks' property before and after the flooding. The Sloveks appealed, asserting, among other things, that the damages should have been measured by the cost of restoring their property to the condition existing before the flooding plus additional amounts for their loss of use and enjoyment of the property and for their annoyance and discomfort. The court of appeals agreed and remanded the case to the district court for a redetermination of damages. On cross-appeal, the court of appeals also rejected the county's challenge to the award of costs. We modify and affirm the court of appeals' judg-ment concerning damages, affirm the award of costs, and remand this case for further proceedings.

## I.

A trial to the court took place in July 1982. The following statement of the facts comes from the oral findings made by the district court and, where necessary to supplement those findings, from the evidence presented at trial.

Plaintiffs John P. Slovek, Sr., and his sons, John P. Slovek, Jr., Gary W. Slovek and Michael S. Slovek, jointly own approximately twenty-two acres of land in Weld County. The St. Vrain River runs from west to east through the northerly part of their property. The great majority of the Sloveks' land lies south of the river, and John P. Slovek, Sr., resides on that part of the property. The county owns land south of the river and immediately to the west of and upstream from the Sloveks' property. On its land, the county operates a gravel pit. A narrow dike separates a pond in the gravel pit from a pond located on the Sloveks' property and used by them for fishing and other recreational purposes.

Sometime in 1978 or 1979, the county cut an opening in the river bank on its property to allow water to drain into the river from the pond that had formed in the gravel pit area. On May 1, 1980, high water in the St. Vrain caused a reversal of the flow through the breach so that water poured into the county's pond from the river. Eventually, the county's pond overflowed, and water poured over the dike separating the county's pond from the Sloveks' property. The water overflowed the Sloveks' pond and washed away a fence, a number of trees and some fish that had been stocked in the Sloveks' pond. In addition, the flood waters deposited silt and debris over a large portion of the Sloveks' land and in the Sloveks' pond, eroded a portion of the banks of the pond, and damaged the dike separating the properties, the dike containing the Sloveks' pond and a third dike on the Sloveks' land. The trial court

concluded that the county was negligent in the manner in which it maintained the breach in the river bank and that this negligence resulted in the flood of water that damaged the plaintiffs' property.[1]

Concerning the damages to be awarded, John P. Slovek, Jr., testified as to the value of fish, trees and fencing lost, and an engineer appearing on behalf of the Sloveks testified that it would cost between $68,900 and $119,300, depending on the extent of the sedimentation in the Sloveks' pond, to repair all of the damage to the land caused by the high water. The engineer also testified that an additional $93,000 would be required for riprap to protect against future erosion of the Sloveks' river banks (*see* footnote 1). The district court determined that the value of the fence, fish and trees lost was $1,550. The court's award for these losses is not at issue here. However, the court rejected the Sloveks' argument that the proper measure of damages to the rest of the property—to the land itself—was the cost of restoring the property to the condition existing prior to the flood.

Instead, the trial court concluded that the proper measure of damages was the reduction in the market value of the Sloveks' property caused by the flood.

The county had presented no evidence concerning the cost to repair the land; the county's evidence on damages related only to the reduction in market value. An appraiser appearing on behalf of the county testified that the value of the Sloveks' property immediately before the flood was $56,000. For reasons that are unknown, the appraiser was not asked to state an opinion as to the value of the property after the flood. The trial court found that the appraiser's valuation actually was "a valuation of the property after the incident," apparently being persuaded of this fact by the closing argument of the Sloveks' counsel.[2] In determining the value of the property prior to the flood, the trial court first noted that the purchase price of the property in 1978 was $64,500 and that Gary W. Slovek had testified that in his opinion the value of the property prior to the flood was $130,000 to $150,000.[3] The

1. In the trial court, the Sloveks also alleged that the county was negligent in the manner in which it had previously straightened the portion of the St. Vrain River in the vicinity of their property and in the manner in which the breach in the county's river bank altered the flow of the river alongside the Slovek land. As a result of these alleged acts of negligence, the Sloveks claimed that their own river banks were damaged during the period of high water in May of 1980. The trial court expressly found that there was no liability on the part of the county resulting from the straightening of the river. Concerning the cut in the river bank, the only liability found by the court to result from that action was the damage caused when water flowed from the river into the county's pond and then onto the Sloveks' property. Thus it can be inferred, although it was not specifically stated, that the trial court found no liability on the part of the county for any damage done by the high water to the Sloveks' river banks. The Sloveks argued on appeal that the trial court erred in not finding that the Board was liable for the alleged damage to the river banks. The court of appeals affirmed. 697 P.2d at 783. A significant portion of the cost of restoring the Sloveks' property, as testified to by the Sloveks' expert engineer, represented the cost of repairing the damage to the Sloveks' river banks and the cost of further work to ensure that erosion would

not occur in the future. One reason why the trial court decided not to award damages based on the costs of restoring the property to its original condition was that the only evidence concerning these costs was to the effect that they would far exceed the pre-tort value of the property. The county emphasizes this point in its challenge to the court of appeals' ruling. However, when the cost of the work on the river banks is subtracted out of the engineer's total repair estimate—on the ground that the county has not been found to be liable for any damage that may have occurred to the Sloveks' river banks—the relationship between restoration costs for which the county may be liable and pre-tort value significantly changes. Utilizing the engineer's figures, the cost to repair the damage for which the county has been found to be liable ranges from $36,100—well below the court's finding as to pre-tort value—to $86,500—$16,500 above pre-tort value.

2. The trial transcript shows that closing arguments were reported but were not transcribed or included in the record.

3. Contrary to the trial court's findings, Gary Slovek estimated that the market value of the property before the flood was $300,000 to $350,000 and its value after the flood was $130,000 to $150,000.

court then took "judicial notice that that was a period of rising real estate prices, but perhaps not rising as rapidly as the plaintiff who testified felt, and I find that the value of the property before the incident was $70,000." The trial court awarded the plaintiffs the difference in market value before and after the flood, or $14,-000. In entering judgment, the court also awarded costs to the plaintiffs.

The court of appeals reversed the district court's award of damages, for the following reason:

> We agree with plaintiffs' contention that where, as here, the property is a private residence and the plaintiffs' interest is in having the property restored, plaintiffs are entitled to those "cost of repair" damages proximately caused by defendant's negligence. The award of such repair costs will more effectively return plaintiffs to the position they were in prior to the injury.

697 P.2d at 783. The court of appeals also concluded that the plaintiffs might be entitled to damages for the loss of the use and enjoyment of the property and that John P. Slovek, Sr., as owner and occupant, might be entitled to damages for annoyance and discomfort. The court of appeals concluded, however, that it was unclear from the record "whether the court considered the availability of these damages to plaintiffs." *Id.* Accordingly, the court of appeals remanded the matter so that the district court could "award damages for those repair costs proximately caused by defendant's negligence, and, if the court determines that damages for loss of use and enjoyment and for annoyance and discomfort to John Slovek, Sr., have been adequately proved, the court should award such damages also." *Id.*

The court of appeals affirmed the district court's award of costs to the plaintiffs. *Id.* at 782. The county had argued that there was no legal authority for the imposition of costs in this instance. The court of appeals disagreed, concluding that "[w]here a public entity waives its sovereign immunity from suit, it may be subject to costs in the same manner as a private litigant." *Id.*

The county then filed a petition for certiorari, arguing that the court of appeals erred in reversing the award of damages and in affirming the award of costs. We begin with an examination of the issue of costs.[4]

## II.

■ C.R.C.P. 54(d) provides that "costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law." Counties are political subdivisions of the state, *Beaver Meadows v. Board of County Commissioners*, 709 P.2d 928, 932 (Colo.1985), so the rule applies when a county or its board of county commissioners is a litigant.

■ The county argues that there is no law that authorizes the imposition of court costs against the county in this case. In particular, the county notes that while the Colorado Governmental Immunity Act, §§ 24–10–101 to –118, 10 C.R.S. (1982 & 1985 Supp.), expressly permits a person to recover damages in tort from the state under certain circumstances, the act does not provide for the imposition of costs against the state. This means, the argument proceeds, that an award of costs can-

4. In the court of appeals, the county also argued that the trial court erred in finding that the plaintiffs had substantially complied with the notice provisions of the Colorado Governmental Immunity Act, § 24–10–109, 10 C.R.S. (1982), or that the county had waived strict compliance with the notice requirement. The court of appeals affirmed, 697 P.2d at 782, and the county did not include this issue in its petition for certiorari. In the court of appeals, the Sloveks also argued that the trial court erred in dismissing their additional negligence claims concerning damage to the Sloveks' river banks (*see* fn. 1) and a claim of outrageous conduct on the part of the county, and that the trial court erred in concluding that John P. Slovek, Sr., was not entitled to damages for emotional distress and medical expenses related to the incident. The court of appeals affirmed the trial court on all these issues. *Id.* at 783. The Sloveks filed a petition for certiorari, raising the emotional distress and outrageous conduct issues. We denied that petition.

not accompany an award of damages in an action such as the one before us.

Recently, in *Lee v. Colorado Dept. of Health,* 718 P.2d 221, 228–29 (Colo.1986), we examined the propriety of imposing costs on the state when it loses a negligence action brought under the Governmental Immunity Act. We concluded that "a public entity which has been sued pursuant to the Act may be taxed costs in connection with the judgment entered against it." *Id.* at 229. Our opinion in *Lee* is dispositive of this issue.

We affirm the award of costs. We consider next the issue of the appropriate measure of damages.

### III.

### A.

In *Zwick v. Simpson,* 193 Colo. 36, 572 P.2d 133 (1977), a trespass action, we were confronted with an issue concerning the appropriate measure of damages for injury to real property, and we concluded as follows:

> As the court of appeals noted, market value before and after the injury is ordinarily a rule applied to measure damages to real property. [Citations omitted.] Since the goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered, there may, of course, be instances in which repair or restoration cost may be a more appropriate measure such as (1) where the property has *no* market value, as in *Big Five Mining Co. v. Left Hand Ditch Co.,* 73 Colo. 545, 216 P. 719 (1923); or (2) where repairs have already been made, as in *Fort v. Brighton Ditch Co.,* 79 Colo. 462, 246 P. 786 (1926); *Big Five Mining Co. v. Left Hand Ditch Co., supra;* or (3) where the property is a recently acquired private residence and the plaintiff's interest is in having the property restored, repair costs will more effectively return him to the position he was in prior to the injury, as in *Bobrick v. Taylor,* 171 Colo. 375, 467 P.2d 822 (1970).

193 Colo. at 38, 572 P.2d at 134 (emphasis in original). The county argues that our discussion in *Zwick* concerning the exceptions to the "ordinary rule" was dicta, and that when squarely considered we should conclude that any measure of damages other than diminution of market value is inappropriate. In addition, the county contends that even if there can be exceptions to the ordinary rule, none apply in the present situation. We do not agree that damages in the present case must be limited to diminution of market value.

■ The measure of damages for injury to real property "is not invariable." *Colorado Bridge & Construction Co. v. Preuit,* 75 Colo. 107, 109, 224 P. 222, 223 (1924) (in department). As noted in the quotation from *Zwick,* above, the goal in compensating the property owner is to reimburse that owner for the actual loss suffered. *Zwick v. Simpson,* 193 Colo. at 38, 572 P.2d at 134; *Colorado Bridge & Construction Co. v. Preuit,* 75 Colo. at 109, 224 P. at 223. Worded another way, "the law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort." Restatement (Second) of Torts § 901 comment a (1979).

In two decisions from the early part of this century, which involved facts similar to the present case, we stated that the proper measure of damages was the diminution of market value. *Mogote-Northeastern Consolidated Ditch Co. v. Gallegos,* 70 Colo. 550, 552, 203 P. 668, 669 (1922); *Mustang Reservoir, Canal & Land Co. v. Hissman,* 49 Colo. 308, 310–11, 112 P. 800, 801 (1911); *see also Colorado Springs Rapid Transit Railway Co. v. Albrecht,* 22 Colo.App. 201, 204–05, 123 P. 957, 959 (1912). We soon noted, however, in *Big Five Mining Co. v. Left Hand Ditch Co.,* 73 Colo. 545, 547, 216 P. 719, 720 (1923), that this rule "is not of universal application, there being cases in which it would not do justice." In that case and in others, we have recognized that different measures of damages, including the cost of restoring the property to its original condition, may be appropriate un-

der certain circumstances if the actual loss suffered is to be truly compensated, although we have not consistently acknowledged the potential for deviation from the "ordinary rule" and commonly have defined only in a very general way the circumstances that will permit a deviation. *See, e.g., Zwick v. Simpson,* 193 Colo. at 38, 572 P.2d at 134; *Bobrick v. Taylor,* 171 Colo. 375, 379, 467 P.2d 822, 824 (1970) (in department); *Dandrea v. Board of County Commissioners,* 144 Colo. 343, 348–49, 356 P.2d 893, 896 (1960) (in department); *Fort v. Brighton Ditch Co.,* 79 Colo. 462, 465–66, 246 P. 786, 787 (1926) (in department); *Colorado Bridge & Construction Co. v. Preuit,* 75 Colo. at 109, 224 P. at 223; *see also Freel v. Ozark-Mahoning Co.,* 208 F.Supp. 93, 98–99 (D.Colo.1962) (applying Colorado law); *Gladin v. Von Engeln,* 651 P.2d 905, 907 (Colo.App.), *cert. denied* (Colo.1982); *but see State of Colorado v. Nicholl,* 150 Colo. 84, 86–87, 370 P.2d 888, 889 (1962) (in department) (following *Mustang Reservoir* in language suggesting its soundness as an absolute rule). To the extent that *Mustang Reservoir* and *Mogote-Northeastern* stand for the proposition that the only appropriate measure of damages in tort for injury to real property is diminution of market value, they are no longer sound and have not been for some time.

Section 929(1)(a) of the Restatement (Second) of Torts provides that "in an appropriate case" the property owner should be allowed to choose as the measure of damages either the diminution of market value or "the cost of restoration that has been or may be reasonably incurred." The Restatement does not explicitly define what is an "appropriate case." However, in justifying the deviation from the market value

standard, a Restatement comment relies on such factors as the nature of the owner's use of the property—in particular, whether the owner uses the property as a personal residence,[5] whether the owner has some personal reason for having the property in its original condition, or both—and the nature of the injury—in particular, whether the injury is reparable and at what cost. Restatement (Second) of Torts § 929 comment b. These factors, to varying extents, have also been considered of significance by other commentators and by courts that have considered the issue. *See, e.g., Zwick v. Simpson,* 193 Colo. at 38, 572 P.2d at 134; *Maloof v. United States,* 242 F.Supp. 175, 183–84 (D.Md.1965); *Mikol v. Vlahopoulos,* 86 Ariz. 93, 340 P.2d 1000, 1001 (1959); *Arras v. Columbia Quarry Co.,* 52 Ill.App.3d 560, 10 Ill.Dec. 192, 195–96, 367 N.E.2d 580, 583–84 (1977); *General Outdoor Advertising Co. v. La Salle Realty Corp.,* 141 Ind.App. 247, 218 N.E.2d 141, 148–52 (1966); *Samson Construction Co. v. Brusowankin,* 218 Md. 458, 147 A.2d 430, 434–37 (1958); *"L" Investments, Ltd. v. Lynch,* 212 Neb. 319, 322 N.W.2d 651, 654–56 (1982); *Huber v. Serpico,* 71 N.J. Super. 329, 176 A.2d 805, 813 (1962); *Jenkins v. Etlinger,* 78 A.D.2d 705, 432 N.Y. S.2d 415, 416 (1980) (mem. decision); D. Dobbs, *Handbook on the Law of Remedies* § 5.1 at 311–18 (1973).

We agree that the factors enumerated in Restatement (Second) of Torts § 929 comment b are important in determining whether a case is appropriate for application of "cost of restoration" rather than "diminution of market value" as the measure of damages for tortious injury to land. We conclude, however, that the considerations governing what is an "appropriate case" for departure from the market

---

**5.** In *Zwick v. Simpson,* we stated that one instance in which the cost of repair may be an appropriate measure of damages is when the property "is a recently acquired private residence and the plaintiff's interest is in having the property restored." 193 Colo. at 38, 572 P.2d at 134. This was the factual situation in *Bobrick v. Taylor* in which we approved an award of damages based on the cost of repair. 171 Colo. at 376–78, 379, 467 P.2d at 823–24. However, the

use of repair costs as the measure of damages is by no means limited to such facts. In particular, whether the property has been "recently acquired" is not by itself a definitive factor. Nor can it be said that repair costs can never be a proper measure of damages when the property is not used as a residence or when it is used as a residence and for some other purpose. Each case must be evaluated under its own circumstances.

value standard are not susceptible to reduction to a set list and that no formula can be devised that will produce litmus-test certainty and yet retain the flexibility to produce fair results in all cases. Indeed, the cases reflect numerous examples of efforts by courts to extricate themselves from the bonds of rigid standards that yielded fair results in the cases that gave them birth, but that lead to perceptibly unjust consequences when applied to different facts. *See* Dobbs, *Handbook on Remedies* § 5.1 at 311.[6] We prefer to leave the selection of the appropriate measure of damages in each case to the discretion of the trial court, informed by the considerations previously discussed. The trial court must take as its principal guidance the goal of reimbursement of the plaintiff for losses actually suffered, *see Zwick v. Simpson,* 193 Colo. at 38, 572 P.2d at 134, but must be vigilant not to award damages that exceed the goal of compensation and inflict punishment on the defendant or encourage economically wasteful remedial expenditures by the plaintiff. Finally, the trial court must articulate the reasons for its decision so as to facilitate effective appellate review.

In the present case, the trial court did not exercise this discretion. Rather, it considered itself bound by the diminution of market value test. Therefore, we agree with the court of appeals that the judgment must be reversed, but contrary to the court of appeals, we do not direct that the cost of repair measure be applied. Rather, without precluding the use of a cost of restoration standard in the present case, we leave the selection of the appropriate measure of

damages to the discretion of the trial court on retrial, to be guided by the considerations discussed in this opinion as applied to the evidence that may develop on retrial.

The county contends that if this court allows the cost of restoration to be considered a proper measure of damages, fairness demands that we place a cap on the recovery of such costs. The county argues that repair costs should not exceed the diminution of the value of the property, *see Mikol v. Vlahopoulos,* 340 P.2d at 1001, or, at least, should not exceed the pre-tort value of the property, *see "L" Investments, Ltd. v. Lynch,* 322 N.W.2d at 656. *See generally* Dobbs, *Handbook on Remedies,* § 5.1 at 317–18.

■ We have no difficulty in rejecting the first limit offered. It is precisely because the reduction in market value is not in many instances an adequate measure of the loss suffered—that is, it is not an amount that most closely approximates what is required to return the property owner to the pre-tort position—that courts allow plaintiffs to recover the costs of restoration in appropriate circumstances. To limit the recovery to an amount that does not exceed the diminution of market value undermines the purpose for allowing the alternative measure of damages. *See "L" Investments, Ltd. v. Lynch,* 322 N.W.2d at 656; Dobbs, *Handbook on Remedies* § 5.1 at 317–18.

■ Although a more compelling case can be made for restricting the award of costs to the pre-tort value of the land—on the theory that defendants should not have to pay more than they would pay for irrep-

---

6. It seems obvious that no one measure of damages is likely to be appropriate to compensate for injury to all these interests in realty. Some cases, older ones in particular, often failed to recognize that more than one kind of interest and hence more than one kind of damage might be involved in real property cases. Such cases generally assumed that a single, universal measure of damages for realty had to be devised, even if it failed to compensate adequately in many cases. This older tendency to seek a single rule has now largely given way in practice to a more flexible approach. Courts today do

not tend to treat all interests in realty alike. They may, in an effort to afford full compensation, even treat two cases of physical damage quite differently, approaching a case of damage to structures quite differently from a case of damage to shrubbery. Sometimes this flexible approach is practiced *sub silentio;* but there is very considerable explicit recognition today that no one rule is sufficient or desirable as a measure of damages in realty-damage cases, and probably most courts now avoid the older inflexible approach. D. Dobbs, *Handbook on the Law of Remedies* § 5.1 at 311 (1973) (footnotes omitted).

arable total damage—we decline to adopt this as an invariable limit either. If the damage is reparable, and the costs, although greater than original value, are not wholly unreasonable in relation to that value, and if the evidence demonstrates that payment of market value likely will not adequately compensate the property owner for some personal or other special reason, we conclude that the selection of the cost of restoration as the proper measure of damages would be within the limits of a trial court's discretion.

Obviously, to the extent that a property owner is allowed to recover costs of restoration that are greater than the diminution in market value, there is the possibility that the owner will receive a monetary windfall by choosing not to restore the property and by selling it instead, profiting to the extent that restoration costs recovered exceed the diminution of market value. The problem is no different, except in degree, if restoration costs are allowed in an amount exceeding the pre-tort value of the property. These possibilities suggest the need for careful evaluation by the trial court to assure that any damages allowed in excess of either of these two measures are truly and reasonably necessary to achieve the cardinal objective of making the plaintiff whole.

In summary, we conclude that the selection of the proper measure of damages in tort for injury to real property requires the exercise of informed discretion by the trial court and that no single measure of damages and no arbitrary limit on the amount permissible can be applied to limit the exercise of that discretion. The trial court improperly considered itself bound to apply a diminution of value test here and did not exercise its discretion. Therefore, the judgment must be reversed.

We turn next to the court of appeals' rulings concerning the possibility of additional damages for the loss of the use and enjoyment of the property and for annoyance and discomfort suffered by John P. Slovek, Sr., as a result of the injury to the property.

**B.**

Besides concluding that the Sloveks are entitled to recover restoration costs, the court of appeals further held that they are entitled to recover for loss of use and enjoyment of the property and that occupant-owner John P. Slovek, Sr., is entitled to recover damages for annoyance and discomfort, if those losses "have been adequately proved." 697 P.2d at 783. The county argues that allowing a property owner to recover under all of these theories amounts to double if not triple recovery. This need not be true, although care must be taken to ensure that damages awarded for these various losses do compensate for separate and distinct injuries, avoiding multiple recovery for the same injury.

Section 929(1) of the Restatement (Second) of Torts states that the damages awarded for injury to real property should include compensation for (a) the diminution of market value or the costs of restoration, as described above; (b) "the loss of use of the land"; and (c) "discomfort and annoyance to [the landowner] as an occupant." The court of appeals first adopted the Restatement analysis in *Miller v. Carnation Co.*, 39 Colo.App. 1, 4–5, 564 P.2d 127, 130, *cert. denied* (Colo.1977), and followed the Restatement and *Miller* in this case, *Slovek v. Board of County Commissioners*, 697 P.2d at 783. We have not considered the Restatement provision before.

Restoring the owner to his pre-tort position by awarding damages that represent the cost of restoration—or compensating that owner for the loss of market value instead of awarding restoration costs—does nothing to compensate the owner for the loss of the use of the property, if any, during the injurious incident or because of a temporary interference with use caused by the incident and continuing until the injury is repaired. In order to make the owner whole, compensation must be paid for this loss of use if such loss can be established by competent evidence.

The loss of the use and enjoyment of property is normally conceived of in

terms of a loss of the owner's ability to receive rent or the loss of an ability to carry on an economic enterprise on the property, measured in terms of a hypothetical loss of rental value. For this reason, the court of appeals held here that recovery for the loss of use "is limited to the loss of rental value of the property occasioned by the invasion." 697 P.2d at 783. However, some courts and commentators have recognized that while certain property has no rental value, as that term is commonly understood, due to the intrinsic nature of the property or because of its present use, the property may have a special, subjective "use value" to the owner or occupant. *See* Dobbs, *Handbook on Remedies* § 5.3 at 333 and n. 10 (and cases cited therein). An owner should be allowed to recover for any interference with or loss of this "use value" that results from another's tortious action if that loss can be satisfactorily demonstrated in concrete terms.[7]

■■■ In addition, personal injury to the landowner in the form of discomfort and annoyance, even sickness or physical harm, may be a distinct and separate result of the property damage. If reasonable and competent evidence is presented on this issue, compensation should also be awarded. Re-

statement (Second) of Torts § 929 comment e. It has been said that when the owner of the land is not an occupant, the general rule is that recovery is allowed only for the objective measure of the loss of rental value, and a nonoccupant-owner cannot recover for any annoyance or discomfort suffered by reason of the property damage. *Id.; see also* Dobbs, *Handbook on Remedies* § 5.3 at 333–34. Why this must always be so is not obvious, and the distinction may not bear scrutiny in the proper case. We have no reason here, however, to settle this issue definitively.

What is clear is that the goal remains the compensation of the injured landowner for any and all losses that result from the conduct for which the defendant is liable, including the loss of the use of the property, if any, and any separate injuries in the nature of discomfort, annoyance or physical illness.[8] In this case, it is not possible to tell from the district court's findings whether it silently rejected the Sloveks' claims for damages for loss of use and enjoyment and for annoyance and discomfort on the ground that these damages had not been proven or because of an opinion that the Sloveks were not entitled to such compensation as a matter of law. On re-

---

7. The county argues that the Sloveks are not entitled to damages for the loss of the use of their property because their continuing lack of use of the property is due to the plaintiffs' own decisions not to undertake repairs of the property and not to use it in its damaged condition. These certainly are factors to be considered in determining whether the Sloveks are entitled to damages for loss of use caused by the defendant's actions. But, other factors that also may be relevant include evidence that the owners did not have the resources to restore the property so that it could be used and evidence that attempts to use the property in its damaged condition—such as the plaintiffs' attempt at swimming in the damaged pond—were wholly unsatisfactory and thus discontinued. In connection with this argument, the county contends that "a continuing interference with the person's interests is essential for a finding of impairment of use of property." While the continuing nature of the interference is again a factor for consideration, there is no reason that it must always be a definitive factor. It is possible to imagine a situation in which interference with the use of property is caused by the injuries flowing from

a short-lived event when those injuries are not immediately reparable.

8. The courts should carefully scrutinize the evidence to ensure that compensation is allowed only for those losses that are separate and distinct. One situation in which there is an obvious potential for an overlap and duplication of damages would be when a plaintiff elects to receive damages based on diminution of market value and also seeks damages for loss of rental value, and the reduction in the market value of the property reflects to some extent the loss of the property's rental value due to a permanent injury. Another situation, possibly relevant here, would be when an owner's claim of interference with a noneconomic, subjective "use value" arises in part from the annoyance, discomfort or inconvenience suffered by the owner. The two interests affected are conceptually distinct—one proprietary, one personal. Obviously, however, the more the "use value" is grounded in noneconomic considerations, the greater the possibility that the distinction between the two types of recovery could be blurred.

mand, the court should expressly determine whether there is sufficient evidence to justify an award of damages on these grounds.

## C.

The county contends that if we affirm the court of appeals' ruling that a different measure of damages should be applied in this case, the county should be given an opportunity to present evidence on remand that is pertinent to the new standards. The Sloveks argue that it would be improper to give the county another chance to introduce the necessary evidence and that the present record is sufficient for a correct determination of damages. We agree with the county.

In *Zwick v. Simpson*, the trial court had awarded damages for injury to property based on restoration costs. The court of appeals reversed, holding that under the circumstances the proper measure of damages was the diminution of the market value of the property. The court of appeals ordered that a judgment of dismissal be entered on the ground that the plaintiff had not presented any evidence concerning diminution of market value. 193 Colo. at 38, 572 P.2d at 134. We affirmed the court of appeals' conclusion that the proper measure of damages in that case was the diminution of market value. 193 Colo. at 38–39, 572 P.2d at 134. However, we concluded that "it would be inequitable to foreclose the possibility of recovery because the plaintiff failed to present evidence on a theory of damages which the trial court felt was inapplicable." 193 Colo. at 39, 572 P.2d at 134. Therefore, we held that the plaintiff should be given an opportunity on remand to present evidence of the diminution of market value. *Id.*

In the present case, the county argues that it is in the same position as the plaintiff in *Zwick v. Simpson*, except that the county seeks a new trial on remand in order to present evidence concerning restoration costs. We agree.

During the presentation of the plaintiffs' case, the attorney for the plaintiffs asked the court "for a ruling on the appropriate measure of damages in this case." While the court stated that it would not make a definitive ruling at that time and that it would listen to arguments on the issue at a later point in the trial, the trial court did state:

[B]ut I will just make my general statement, that my general view of the general measure of damages to injury to land is the value before, the difference between the value before the injury and the value after the injury. Now, you are as well acquainted as I am with the many, many decisions of the Colorado Supreme Court on the point, and there are variations, and under certain circumstances, includes the cost of repair. On the other hand, where the cost to repair greatly exceeds the value of the property, I have my doubts that that would be an appropriate measure. In short, my impression that the general use of the cost to repair is it's a guide to the diminution in the value of the property.

The trial court then noted that the plaintiffs' expert had testified as to a cost of repair that "far exceeds the value of the property," and that the court had "some question in mind that under those circumstances it would be proper to apply the cost to repair." The trial court never deviated from this view of the proper measure of damages. Following these statements by the trial court, the rest of the evidence presented by the plaintiffs concerning damages had to do with the diminution of the market value of the property. In the defendant's case, the only evidence of damages introduced concerned diminution of the market value.

The Sloveks argue that the trial court never made a definitive ruling precluding the county from presenting evidence concerning the cost of repair. In a strict sense, that is true. But in *Zwick*, we did not state that the litigant must be completely foreclosed by an order of the court from presenting evidence on the alternative measure of damages before a new trial on damages may be required. Rather, we concluded that a new trial on damages was

necessary in that case when the plaintiff failed to present evidence on a theory of damages "which the trial court felt was inapplicable." 193 Colo. at 39, 572 P.2d at 134. This is also true of the present case. We conclude that it would be inequitable, on this record, not to allow the county an opportunity to present evidence on what has been determined on appeal to be a measure of damages that appropriately may be considered in the discretion of the trial court, a damages measure that is contrary to what the trial court clearly considered to be applicable throughout the trial.

Accordingly, we affirm the judgment of the court of appeals, although for different reasons as expressed herein, and remand this matter to be returned to the trial court for a new trial on the issue of damages only. The trial court must apply a measure of damages that is consistent with the views expressed in this opinion.

ERICKSON, J., concurs in part and dissents in part.

VOLLACK, J., concurs in part and dissents in part and ROVIRA, J., joins in the partial concurrence and dissent.

ERICKSON, Justice, concurring in part and dissenting in part:

I respectfully dissent from Part III of the majority opinion. While I agree with much of the majority opinion, I do not believe the damage issue is postured in a manner that permits us to direct the trial court to consider on remand the damages issues set forth in Part III. I concur with the majority on all other issues.

The majority correctly notes that the general measure of damages for a trespass action is the diminution of market value. *Zwick v. Simpson*, 193 Colo. 36, 572 P.2d 133 (1977). While there are exceptions to the general rule, the plaintiff must prove facts showing he is entitled to invoke one of the alternative measures of recovery. *See Hoover v. Shott*, 68 Colo. 385, 189 P. 848 (1920). Here, the Sloveks failed to establish a basis for application of one of

the three *Zwick* alternatives to the general rule.

I am not persuaded that "the trial court did not exercise [its] discretion." Majority op. at 1316. When the trial judge communicated his understanding of Colorado law on the subject, *see* majority op. at 1319–1320, trial counsel was told that the court intended "to follow the decisions of the Colorado Supreme Court on the point," and that the proper measure of damages "depends on the circumstances." Trial record at 270. The trial judge also expressed skepticism, which I share, about the propriety of restoration damages where the cost of repair significantly exceeds the value of the property. *Id.* The judge stated that he was not ruling on the issue but that it was his impression of what the law was. Record at 271. My examination of the record and the pleadings reveals that the alternatives to the diminution-of-market-value issue were not again addressed until the Sloveks' motion for a new trial. *See Andersen v. Edwards*, 625 P.2d 282 (Alaska 1981).

In short, the trial court exercised its discretion in view of the fact that the Sloveks neither proved nor offered to prove that they were entitled to anything but the presumptively correct measure of damages. The threshold burden of establishing the applicability of the alternatives in *Zwick* and the Restatement of Torts was not met.

The majority acknowledges that the proper measure of damages falls within the discretion of the trial court. Unfortunately, the evidence relating to diminution in market value suffers the flaws recognized in both the majority opinion and Justice Vollack's dissent. However, in my view, the errors which occurred, as reflected in the record before this court, do not warrant a further hearing or a new trial. I would affirm the trial court on the damage issue, and I concur with the majority on all other issues.

VOLLACK, Justice, concurring in part and dissenting in part:

I concur with Part II of the majority opinion affirming the award of costs. I

respectfully dissent to Part III., A. and B., of the majority opinion which would permit the amount of restoration cost to exceed diminution of market value.

I agree with the majority opinion that the selection of the appropriate measure of damages in each case lies within the discretion of the trial court based upon the facts involved in each case. The trial court, sitting as the trier of fact or in instructing a jury, should apply the appropriate measure of damages, either the diminution of market value of the property as a result of the tort, or the cost of restoration of the property to the pre-tort condition. I disagree with the majority opinion's failure to limit total damages to the market value of the property at the time of the tort. The better rule would be for the trial court to determine in its discretion whether there can be restoration, and to award such damages only if the cost of restoration is less than or equal to the difference between the value of the land before and after the occurrence of the injury. *Mikol v. Vlahopoulos*, 86 Ariz. 93, 340 P.2d 1000 (1959); *Blanton and Co. v. Transamerica Title Insurance Co.*, 24 Ariz.App. 185, 536 P.2d 1077 (1975).

If the majority opinion is applied with no cap on the limit of damages which may be awarded, an unwarranted windfall to the injured party may result. The purpose of compensation for the invasion of property rights is to place the injured party in a pre-tort position. In no instance should recovery of damages in excess of the market value of the property immediately preceding the damage be allowed. The plaintiff should not be able to recover a greater amount for partial destruction than one could recover for total destruction than one could recover for total destruction of the subject property. If the cost of repair exceeds the market value of the property, the proper measure of damages would be the difference between the market value of the property just before the damages and the market value after the damages. *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 322 N.W.2d 651 (1982).

The majority opinion in Part III. B. considers whether the plaintiffs would be entitled to damages for loss of use and enjoyment, annoyance, and discomfort resulting from the acts of the defendant. The ruling by the trial court lacks findings concerning these matters, and the trial court should expressly determine in its findings on remand whether or not there is sufficient evidence to award such damages. If need be, further testimony may be taken, but need not if the trial court can make appropriate findings and conclusions from the record as it presently exists.

Because of certain rulings by the court during trial based on the plaintiffs' request for a determination as to the applicable measure of damages, I would concur in Part III. C. of the majority opinion that the county should be afforded an opportunity to put on testimony as to the cost of restoration. Furthermore, based on the lack of evidence in the record, testimony should be produced to establish the value of the property prior to the flood and the value of the property after the flood. I agree the matter should be remanded for retrial on the question of damages only, and the determination of either cost of repair damages or diminution of value damages, as long as the judgment amount does not exceed the difference between the market value of the property at the time of the injury and the market value of the property after the injury.

I am authorized to state that Justice ROVIRA joins in this concurrence and dissent.