**Lenill L. THORNTON, Petitioner,**

v.

**UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.**

No. 96–3161.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1997.

Decided March 24, 1997.

Thomas M. Henry (argued), Peoria, IL, for petitioner.

Thomas W. Sadler (argued), Catherine C. Cook, Railroad Retirement Board, Bureau of Law, Chicago, IL, for respondent.

Before COFFEY, MANION and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Lenill Thornton petitions for review of the affirmance by the United States Railroad

Retirement Board ("the Board") of its hearing officer's decision denying his application for a disability annuity under the Railroad Retirement Act ("the Act").[1] Petitioner argues that the Board erred by affirming the hearing officer's decision denying his disability annuity application without the benefit of an oral hearing. We affirm.

## I. Background

Thornton was employed by the railroad from 1965 until 1982 and filed an application for a disability annuity under the Act after suffering a heart attack some three months earlier on November 18, 1993. Twelve days later on the 30th of November, 1993, Thornton returned a "Self–Employment and Substantial Service Questionnaire"[2] with his application, wherein he stated that, prior to his heart attack, he had been the "Head Minister" of the Pleasant Grove Missionary Baptist Church ("the church") in Peoria, Illinois. His services to the church included preaching on Sundays, infrequently performing weddings and funerals, and making hospital visits. On occasion, he was required to be on duty 24 hours per day. In his application he reported that his weekly earnings were $247.50, that his prorated monthly earnings were $1072.50, and that these figures had remained consistent for all of 1992 until August 1993 when he suffered his heart attack. He admitted in his application that he did not report these payments to the IRS as income because, in his words, they were characterized as a "love offering." After August 1993, Thornton continued to receive a "love offering" in the same amount he received before his heart attack. He alleged, however, that he was unable to perform his ministry after his heart attack.

On May 26, 1994, the Board's Bureau of Retirement Claims ("Bureau") denied petitioner's application, determining that, based upon objective medical findings, Thornton was able to perform "past relevant work or other work in the national economy." R. at 84. The Bureau denied petitioner's request for reconsideration on August 19, 1994, with a medical finding that he was still "capable of doing light work such as [his] past work as a minister." R. at 89. On October 7, 1994, Thornton appealed the Bureau's denial of his disability annuity application to the Board, which in turn assigned a hearing officer to investigate his claim. On January 11, 1995, while his appeal was still under investigation by the hearing officer, Thornton applied for an age and service-based annuity under the Act and was awarded a reduced early retirement benefit.[3] On his application for this annuity, petitioner reported that he was employed by the church at a salary of $200 per week and stated that "I am still working." R. at 254.

On March 2, 1995, the hearing officer wrote Thornton, advising him that he would be receiving further information regarding a hearing as soon as one was scheduled, and that he had the right to be represented by counsel at such hearing. The letter further requested a monthly breakdown of any earnings received from the church from 1993 until the present time. Upon being advised that Thornton was represented by counsel, the hearing officer wrote a letter to petitioner's attorney on March 27, 1995, requesting copies of tax returns and a signed statement from the petitioner addressing the nature and terms of his work for the church and of any remuneration received. On April 24, 1995, the hearing officer again wrote Thornton's attorney, asking for a signed statement from petitioner concerning his relationship with the church and the nature of his income, and also requested the names and addresses of the church's governing board. Petitioner's counsel declined to provide the names of the church's board members, instead providing two documents: (1) a letter from Thornton to

1. 45 U.S.C. § 231 et seq.

2. The Board is authorized to collect the information requested in the questionnaire pursuant to section 7(b)(6) of the Act, 45 U.S.C. § 231f(b)(6).

3. *See* 45 U.S.C. § 231a(a)(1)(iii). This section provides for a reduced retirement annuity to former railroad employees with at least ten, but less than 30, years of service, and to those who have attained 62 years of age but are still under retirement age as defined in the Social Security Act, 42 U.S.C. § 416(*l*). By contrast with a recipient of a disability annuity, an age and service-based annuitant may work in non-railroad employment.

the church's board dated September 15, 1993, wherein he stated that he was resigning as pastor, but would be continuing as "Pastor Emeritus"; and (2) a letter from the church's financial secretary that ostensibly confirmed the resignation and indicated that for Thornton's "past and continuing stewardship the church gives him a love offering of $247.50 per week, to assist in his living expenses, as well as various other expenses."[4]

On June 30, 1995, the hearing officer ruled without the benefit of an evidentiary hearing, based upon the two annuity applications submitted by the petitioner, that pursuant to the Board's regulations (which preclude a finding of disability if the applicant's monthly earnings exceed $500),[5] he was not entitled to a disability annuity. The hearing officer found that Thornton's statement that his income from the church was a "love offering," as well as the letter that appeared to be issued by the church's financial secretary confirming his retirement and the continued "love offering," was "less than credible." R. at 24. Further, the hearing officer found the payments petitioner was receiving from the church to be "too large, regular in disbursement, and consistent in amount" to be considered gratuitous. R. at 21. Moreover, the hearing officer found that Thornton's age and service annuity application, which was filed *after* his disability annuity application, served to confirm that he was still employed by the church.

On July 20, 1995, petitioner appealed the hearing officer's decision to the full three-member Board, which, on May 16, 1996, adopted and affirmed the hearing officer's decision with additional comments. The Board found that petitioner receives approximately $245 per week from the church and agreed with the hearing officer that Thornton works exclusively and full-time for the church, and further that the regular weekly payments received from the church cannot be characterized as a "love offering" or gift. The Board also ruled in agreement with the

hearing officer that there were no questions of fact warranting a hearing and that Thornton was not disabled as a matter of law because the level of his reported earnings exceeded the $500 maximum permitted under the Board's regulations. Accordingly, the Board concluded that petitioner was not eligible for a disability annuity under the Act. His appeal was denied and Thornton now petitions this court for review.

## II. Discussion

When reviewing a final decision of the Board, "[t]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." 45 U.S.C. § 355(f). We will reverse the decision of the Board only if it is not supported by substantial evidence. *Stith v. United States R.R. Retirement Bd.*, 902 F.2d 1284, 1287 (7th Cir.1990). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Thornton argues that the Board denied him the due process provided by both statute and the Board's own regulations, when it affirmed the hearing officer's decision which found, without conducting a hearing, that petitioner was ineligible for a disability annuity.

Section 231a(1)(v) of Title 45 entitles qualified railroad retirees to an annuity if their "permanent physical or mental condition is such that they are unable to engage in any regular employment." The Board's regulations state that in order to qualify for a disability annuity, the applicant "must have a severe impairment, which makes him or her unable to do any previous work or other *substantial gainful activity* which exists in the national economy." 20 C.F.R. § 220.26 (1996) (emphasis added); *see also Smith v. United States R.R. Retirement Bd.*, 85 F.3d 224, 226 (5th Cir.1996). "The [Board's] regu-

**4.** Thornton's attorney reported that he refused to provide the names of the church's governing board because he wanted to "avoid a First Amendment contest involving the Church's right to provide love gifts to a former minister as its free exercise of religion for the Government may

not impermissibly constitutionally intrude or attempt to regulate." R. at 236. Thornton failed to elaborate in his briefs or during oral argument upon any free exercise implications to this case.

**5.** *See* 20 C.F.R. § 220.143(b)(2)(vii) (1996).

lations further set forth the method by which the Board shall determine whether a claimant is disabled from any regular employment." *Id.* at 226 n. 5. "If a claimant is working, and the work is substantial gainful activity, the Board will find that he or she is not disabled regardless of his or her impairments...." 20 C.F.R. § 220.100(b)(1) (1996) (emphasis added). Moreover, the Board employs "guides to decide whether the work the claimant has done shows that he or she is able to do substantial gainful activity." 20 C.F.R. § 220.143(a) (1996). If the claimant's earnings "averaged more than $500 a month" the Board will "consider [that such] earnings ... show that the claimant has engaged in substantial gainful activity." 20 C.F.R. § 220.143(b)(2)(vii) (1996). We have previously applied a comparable regulatory-based presumption[6] in the Social Security disability benefits context. *See Stevenson v. Chater*, 105 F.3d 1151 (7th Cir.1997); *Wolfe v. Shalala*, 997 F.2d 321 (7th Cir.1993).

Although the Act does not contain a hearing and review provision, section 231g of the Act incorporates the hearing and review provisions of the Railroad Unemployment Insurance Act.[7] The Board's regulations also provide claimants the right to a hearing:

> The appellant, or his or her representative, shall be afforded full opportunity to present evidence upon any controversial question of fact, orally or in writing or by means of exhibits; to examine and cross-examine witnesses; and to present argument in support of the appeal.

20 C.F.R. § 260.5(f) (1996). However, consistent with the requirements of due process,[8] the Board's regulations do not afford a hearing if the record is barren of any issues of fact:

> *Submission of written argument in lieu of oral hearing.* Where the hearings officer finds that no factual issues are presented by an appeal, and the only issues raised by the appellant are issues concerning the application or interpretation of law, the appellant or his or her representative shall be afforded full opportunity to submit written argument in support of the claim but no oral hearing shall be held.

20 C.F.R. § 260.5(g) (1996). Thornton concedes that he is entitled to a hearing only if issues of fact are present. Instead, he contends that the record contains issues of fact, precluding a determination that he was ineligible for a disability annuity without being afforded the benefit of an oral hearing. Petitioner argues that if a hearing had been held, he could have presented his own testimony and the testimony of the church's governing board to bolster the assertion that, even though he continued to receive income, he was no longer active as the church's minister after his heart attack.

■ We have reviewed the record and conclude that substantial evidence supports the Board's decision affirming the hearing officer's denial of Thornton's disability annui-

---

**6.** *See* 20 C.F.R. § 404.1574(b)(2). In relevant part it provides:

> We will consider that your earnings from your work activities as an employee show that you have engaged in substantial gainful activity if—
> * * *
> (vii) Your earnings averaged more than $500 a month in calendar years after 1989.

**7.** Section 231(g) of Title 45 provides in relevant part:

> Decisions of the Board determining the rights or liabilities of any person under this subchapter shall be subject to judicial review in the same manner, subject to the same limitations, and all provisions of law shall apply in the same manner as though the decision were a determination of corresponding rights or liabilities under the Railroad Unemployment Insurance Act [45 U.S.C. § 351 *et seq.*]....

Section 355(c) of Title 45 provides in pertinent part:

> Each qualified employee whose claim for benefits has been denied in whole or in part upon an initial determination ... shall be granted an opportunity for a fair hearing thereon before a referee or such other reviewing body as the Board may establish or assign thereto.

**8.** *See State Bank of India v. NLRB*, 808 F.2d 526, 538 (7th Cir.1986) ("A party 'is entitled to a hearing only when it raises substantial and material factual issues ...'" (citation omitted.)); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 311 (7th Cir.1981) (In a "proceeding ... involving no disputed questions of fact, no evidentiary hearing is required by the due process clause."); *Louis–Allis Co. v. NLRB*, 463 F.2d 512, 520 (7th Cir.1972) ("It is axiomatic that due process requires evidentiary hearings only where 'substantial and material' issues are raised....").

ty application without conducting a hearing. When asked on his disability annuity application "whether or not you receive money for your services," appellant replied, "I receive $247.50 weekly. There are no deductions [for taxes] taken from this, it is considered a 'love offering.'" More than a year later, when applying for an age and service-based annuity, appellant claimed that he was receiving $200 per week for his services and that he was "still working." This subsequent retirement annuity application confirms the findings made by the hearing officer and the Board that the income petitioner was receiving from the church was not gratuitous, but for ministerial services still being rendered almost a year and a half after his heart attack. Moreover, we agree with the hearing officer that it is incredible to characterize the payments Thornton was receiving from the church as a "love offering," given the regularity of the disbursements and the consistency of the amounts.

Petitioner proceeded at great risk when, according to the hearing officer, Thornton's attorney "failed to provide the evidence requested," and instead chose to submit information that was "neither substantive nor probative." R. at 20. The Board's regulations provide that failure to submit requested evidence or information may result in denial of the claimant's application for benefits. 20 C.F.R. § 219.3 (1996).[9] Likewise, when a claimant seeks disability benefits under the companion Social Security Act,[10] the regulations give ample warning that failure to supply the requested evidence may subject the claimant to a denial of benefits. 20 C.F.R. § 404.705 (1996).[11] The same facts that petitioner sought to flesh out in an oral hearing,

i.e., the nature of his relationship with the church and the terms under which he was receiving income (via his own testimony and that of the church's governing board) were requested by the hearing officer. Petitioner, for reasons not clear in the record, refused to be forthcoming with the information requested by the hearing officer and thus took the risk of being denied benefits.

## III. Conclusion

The Board's decision denying Thornton's application for disability annuity benefits is AFFIRMED.

---

9. Section 219.3 of Title 20 of the Code of Federal Regulations provides in pertinent part:

(a) *To prove initial eligibility.* The Board will ask for evidence to prove a claimant is eligible for benefits when he or she applies for benefits. Usually the Board will ask the claimant to furnish specific kinds of evidence or information to prove initial eligibility for benefits. *If evidence or information is not received by that date, the Board may decide that the claimant is not eligible for benefits and will deny his or her application* (emphasis added).

10. We have previously recognized that the "similarity of the SSA and the [Act] supports applying

the same analysis on appeal from decisions under both Acts." *Aspros v. United States R.R. Retirement Bd.,* 904 F.2d 384, 386 (7th Cir.1990). "Social Security regulations should guide [the Board's] decisions on disability applications" under the Act. *Id.*

11. Section 404.705 of Title 20 of the Code of Federal Regulations provide in relevant part:

Generally, you will be asked to give us by a certain date specific kinds of evidence or information to prove you are eligible for benefits. *If we do not receive the evidence or information by that date, we may decide you are not eligible for benefits* (emphasis added).