2012 COA 88

Paul HENDRICKS and Linda Hendricks, Plaintiffs–Appellees,

v.

ALLIED WASTE TRANSPORTATION, INC., d/b/a BFI Waste Services of Denver, Defendant–Appellant.

No. 11CA1361.

Colorado Court of Appeals, Div. I.

May 24, 2012.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

Dorothy C. Stone, Elizabeth, Colorado; Helms & Associates, PC, Thomas J. Helms, Englewood, Colorado, for Plaintiffs–Appellees.

Kane Law Firm, PC, Mark H. Kane, Hayden W. Kane, II, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge FOX.

¶ 1 In this negligence action, defendant, Allied Waste Transportation, Inc. (Allied), appeals a jury verdict awarding plaintiffs, Paul and Linda Hendricks (the Hendrickses), $160,100 in damages. We affirm.

## I. Background

¶ 2 While driving an Allied garbage truck, an Allied employee backed into the corner of the Hendrickses' house in the City of Englewood (the City). After Allied admitted liability, the trial focused on the amount of damages.

¶ 3 At trial, a structural engineering expert testified to the following:

- The garbage truck's collision caused damage to the house, including cracking and lateral displacement of the brick veneer on the entire north wall and eleven feet of the west wall, lateral displacement of the north bathroom wall area, and roof shake damage along the north and west edges of the roof;

- It was not feasible to repair the home because of structural deficiencies, including nonstandard wall framing and the absence of a permanent foundation on the damaged side of the home; and

- These structural deficiencies were not apparent before the structural engineer performed destructive testing of the northwest corner of the home.

¶ 4 The City's chief building official testified that a building permit is required before repairing a building and that the City would not issue a building permit to the Hendrickses because of the structural deficiencies the structural engineer found. Because the damage could not be repaired, the damaged portion of the home would need to be torn down and rebuilt.

¶ 5 At trial, Mrs. Hendricks described the post-collision condition of the home as follows:

- temporary plywood covered the damaged wall of the home;

- there was no insulation in the bathroom;

- the pipes to the bathroom had frozen;

- it took thirty to forty-five minutes for the shower water to warm up;

- the bathroom cabinet was about to come off the wall;

- the bathroom window frame was no longer attached to the frame of the house;

- foam insulation used to prevent a draft from the broken window frame also pre-

vented natural light from illuminating the bathroom; and

• the overhead bathroom light fixture was nonfunctional.

¶ 6 Mrs. Hendricks testified that she and her husband had endured the foregoing conditions, and the discomfort associated with each, for three years because they could not afford to rebuild the structure, and because the City would not authorize a "patch job."

¶ 7 Although the jury was instructed on the cost of repairs, diminution in value, and noneconomic damages, the parties agreed to a general verdict form that did not ask the jury to specify the types of any damages awarded. The jury returned a general verdict of $160,100 in favor of the Hendrickses. The trial court granted the Hendrickses' motion to amend the judgment to include prejudgment interest and costs, and denied Allied's motion for a hearing on the reasonableness of the Hendrickses' requested costs.

¶ 8 Allied contends that the trial court (1) lacked subject matter jurisdiction, (2) erred by admitting evidence about, and instructing the jury on, noneconomic damages,[1] (3) erred by providing an improper jury instruction about "betterment," and (4) erred by awarding the Hendrickses costs without a hearing and by awarding prejudgment interest. We perceive no error.

## II. Subject Matter Jurisdiction

¶ 9 Allied contends that the trial court lacked subject matter jurisdiction because the Hendrickses failed to exhaust their administrative remedies by failing to complete the building permit application process before the damages trial. We disagree.

### A. Standard of Review

■ ¶ 10 Where the underlying facts are not in dispute and the issue is purely one of law, we review the issue of subject matter jurisdiction de novo. *People v. Blue*, 253 P.3d 1273, 1276 (Colo.App.2011) (citing *Medina v. State*, 35 P.3d 443, 454 (Colo.2001)).

### B. Exhaustion

■ ¶ 11 Allied argues that before seeking judicial relief, the Hendrickses were required to apply to the City for a building permit, and if it was denied, to file an appeal with the Board of Appeals. We disagree.

■ ¶ 12 Generally, a plaintiff's failure to exhaust available administrative remedies will bar a plaintiff's attempt to obtain judicial review of administrative action. *Horrell v. Department of Admin.*, 861 P.2d 1194, 1197 (Colo.1993). The Hendrickses' complaint did not seek review of an administrative action. Rather, the Hendrickses' complaint sought a declaration of liability and tort damages from Allied. The complaint did not request, and did not need to request, any relief from the City or the Board of Appeals. *Cf. id.* ("[W]here administrative remedies are provided by statute, the statutory procedure must be followed *when the matter complained of is within the jurisdiction of the administrative authority*." (emphasis added) (quoting *Denver–Laramie–Walden Truck Line, Inc. v. Denver–Fort Collins Freight Serv., Inc.*, 156 Colo. 366, 370, 399 P.2d 242, 243 (1965))). Moreover, the building permit process does not provide a remedy for the Hendrickses' injury.

■ ¶ 13 The doctrine of exhaustion of administrative remedies "applies typically in a controversy between a private party and a governmental agency, which has its own administrative review process." *New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1178 (Colo.App.2008). The doctrine does not apply to a dispute between two private parties. *Id.* Because the Hendrickses and Allied are private parties, the exhaustion doctrine does not apply to this action. Accordingly, we conclude that the trial court was correct in rejecting Allied's argument that the Hendrickses were required to exhaust administrative remedies before seeking judicial review.

---

1. The noneconomic damages included damages for annoyance, discomfort, inconvenience, and

loss of enjoyment of use of the property.

## III. Noneconomic Damages

¶ 14 Allied contends that the trial court erred by providing jury instructions that misstated the law about noneconomic damages and by admitting testimony about noneconomic damages. We disagree.

### A. Standard of Review

¶ 15 We review de novo whether a particular jury instruction correctly states the law. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo.2011). As long as the instruction properly informs the jury of the law, a trial court has broad discretion to determine the form and style of the instructions. *Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo.2009).

¶ 16 We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Bly v. Story*, 241 P.3d 529, 535 (Colo.2010). We will not overturn its ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Yusem v. People*, 210 P.3d 458, 463 (Colo.2009).

### B. Jury Instruction

¶ 17 The trial court instructed the jury that recoverable damages included: "Damages and losses suffered by the plaintiffs as a result of the defendant's conduct including loss of enjoyment, annoyance, discomfort, and inconvenience."

¶ 18 Allied contends that the instruction was erroneous because it permitted the jury to award damages for emotional distress. The Hendrickses concede that victims of physical damage to real property cannot be compensated for purely emotional distress. *Webster v. Boone*, 992 P.2d 1183, 1185 (Colo. App.1999). They argue, however, that the instruction was proper because damages for loss of enjoyment, annoyance, discomfort, and inconvenience are not emotional distress damages. We agree with the Hendrickses.

¶ 19 The goal of tort damages is to compensate the injured landowner "for any and all losses that result from the conduct for which the defendant is liable, including the loss of the use of the property, if any, and any separate injuries in the nature of discomfort, annoyance or physical illness." *Board of Cnty. Comm'rs v. Slovek*, 723 P.2d 1309, 1318 (Colo.1986). The *Slovek* court explained that the subjective "use value" of the property to the owner or occupant may be a distinct and separate component of the property damage. *Id.* "An owner should be allowed to recover for any interference with or loss of this 'use value' that results from another's tortious action if that loss can be satisfactorily demonstrated in concrete terms." *Id.* If "reasonable and competent evidence" is presented about "personal injury to the landowner in the form of discomfort and annoyance, [including] sickness," compensation should be awarded. *Id.* (citing Restatement (Second) of Torts § 929 cmt. e (1979)).

¶ 20 Allied attempts to distinguish *Slovek* because the claims in that case were based on trespass and negligence, while the claims here were based solely on negligence. However, *Slovek* relied on section 929(1)(c) and comment e thereto of the Restatement (Second) of Torts, which include "discomfort and annoyance" as recoverable damages for "harm to land" generally, and do not distinguish between trespass and negligence claims. Other jurisdictions relying on the Restatement permit occupants of real property to recover noneconomic damages resulting from a tortfeasor's negligence. *See, e.g., Houston v. Texaco, Inc.*, 371 Pa.Super. 399, 538 A.2d 502, 505 (1988) (explaining that "[t]he law in [Pennsylvania] has long recognized that where injury is sustained to real property as a result of the negligence of another, the property owner is entitled to damages for the inconvenience and discomfort caused thereby"); *Hawkins v. Scituate Oil Co.*, 723 A.2d 771, 772 (R.I.1999) (remanding to allow the plaintiffs to introduce evidence concerning—and to, recover damages for—inconvenience, discomfort, or annoyance that they experienced as a result of the defendant's negligence damaging their home); *Evans v. Mutual Mining*, 199 W.Va. 526, 485 S.E.2d 695, 702 (1997) (holding that although damages for mental anguish are not appropriate in a negligence action for injury to real property, the jury may consider annoyance and inconvenience).

¶ 21 Contrary to Allied's argument, we do not find Colorado cases interpreting *Slovek*

to limit its holding to trespass and nuisance claims. Allied cites *Webster*, 992 P.2d at 1186, a case involving damages for negligence, trespass, and nuisance, in support of its position, based on the division's statement that "[o]ur cases have permitted recovery for annoyance and discomfort damages on nuisance and trespass claims while at the same time precluding recovery for 'pure' emotional distress." *Id.* Although the division did not specifically refer to the negligence claim when it addressed evidentiary issues concerning noneconomic damages, the division did not exempt the negligence claim from those for which these types of damages may be awarded. *Id.* at 1185–87. Because the damages resulted from all the claims in *Webster*, and plaintiffs could not recover twice for the same harm, the division had no reason to decide whether noneconomic damages were recoverable for the negligence claim independently of the other claims.

¶ 22 After *Webster*, a division of this court clarified that the *Slovek* principles apply to *any* tort action "involving damages for injury to real property" where "the fact finder is required to determine, as nearly as possible, the actual loss suffered by the property owner." *Hawley v. Mowatt*, 160 P.3d 421, 424 (Colo.App.2007). We agree. The *Slovek* principles thus apply to the damages here, which resulted from Allied's negligence.

¶ 23 We conclude that the jury instruction given is consistent with the supreme court's definition of "use value." *Slovek*, 723 P.2d at 1314; *see also Hawley*, 160 P.3d at 426 (jury was properly instructed that damages in a trespass claim may include discomfort and annoyance to the property's occupant). Absent any evidence that the jury improperly awarded damages for emotional distress, we presume the jury followed the court's instructions. *Hawley*, 160 P.3d at 427. Accordingly, we reject Allied's claim that the jury was improperly instructed on noneconomic damages.

### C. Evidentiary Rulings

¶ 24 Allied next contends that the trial court erred by permitting Mrs. Hendricks to testify about "pure emotional damages." Specifically, Allied contests Mrs.

Hendricks' testimony describing her shock and dismay when she first saw the damage, the loss to her sense of security which her home provided before the damage, the discomfort and inconveniences which resulted from the extensive damage to the bathroom, and her worry about losing her home. We perceive no error.

¶ 25 In *Webster*, 992 P.2d at 1185–87, a case involving damages for negligence, trespass, and nuisance, the trial court permitted the plaintiffs to testify to their distress when a flood destroyed their personal possessions. The division reversed the judgment and described the inadmissible testimony as follows:

> [Plaintiffs] testified to the impact on them of the loss of their personal property, including keepsakes they had had since childhood and mementos of their children, who were deceased. Both testified that there was no way of assigning a monetary value to the lost items. [The wife] testified that the events had made her husband unhappy, that she and her husband now "get in each other's hair," that it was painful for her to recall what had happened, and that the experience had been "almost like another death."

*Id.* at 1186. The division explained that the "annoyance and discomfort" for which damages may be recovered in tort claims generally refer to "distress arising out of physical discomfort, irritation, or inconvenience caused by odors, pests, noise, and the like." *Id.* at 1185–86. The improper testimony "went to a kind of distress which, however genuine, was not within the scope of damages recoverable as annoyance and discomfort." *Id.* at 1186.

¶ 26 In contrast, the division concluded that the plaintiffs' testimony regarding the time and effort spent cleaning the basement, the smell caused by the flooding, and the inconvenience and interference with their ability to pursue their hobbies that resulted from the damage to their home concerned recoverable damages. *Id.*

¶ 27 Because damages for loss of enjoyment, annoyance, discomfort, and inconvenience "by their very nature include a mental or emotional component," limited testimony

about a plaintiff's reactions or feelings may be used to describe these noneconomic damages. *See id.* at 1185; *see also Calvaresi v. National Dev. Co.*, 772 P.2d 640, 645 (Colo. App.1988) (in an action for tortious injury to land, plaintiffs are entitled to present evidence to establish their discomfort, annoyance, and loss of use and enjoyment of property, but are not entitled to recover damages for emotional distress).

¶ 28 Mrs. Hendricks' testimony was unlike the inadmissible testimony in *Webster*, where the plaintiffs emphasized the emotional and sentimental value of their destroyed personal property. *Id.* Here, Mrs. Hendricks testified that she was "dismayed" and "distraught" by the damage to her property to explain the extent of her annoyance and discomfort, which are recoverable components of noneconomic damages. *See, e.g., Esposito v. New Britain Baseball Club, Inc.*, 49 Conn.Supp. 509, 895 A.2d 291, 293, 299–304 (2005) (considering the plaintiffs' emotional reactions to fireworks, such as anxiety, anger, and frustration, in awarding damages for annoyance and discomfort). Likewise, Mrs. Hendricks' testimony about being happy in the home before the incident, in contrast to the worry and loss of security she and her husband felt after the incident, was relevant to show her loss of enjoyment of the property. *See generally Kelly v. CB & I Constructors, Inc.*, 179 Cal.App.4th 442, 102 Cal.Rptr.3d 32, 43 (2009) (distinguishing annoyance and discomfort damages from damages for mental and emotional distress, and explaining that the former are intended to compensate for the loss of a plaintiff's peaceful occupation and enjoyment of the damaged property); *see also Hanna v. Motiva Enterprises, LLC*, 839 F.Supp.2d 654, 671 (S.D.N.Y.2012). When Mrs. Hendricks testified about the physical discomforts caused by the damaged bathroom, her limited remarks about her emotions were permissible. *See Falgout v. St. Charles Sewerage Dist. No. 3*, 351 So.2d 206, 210 (La.Ct.App.1977) (the plaintiff was entitled to recover damages for inconvenience resulting from backup of sewage into the plaintiff's home, including for several occasions where the toilet overflowed, the bathroom could not be used for a period of sixty-five hours, the plaintiff was compelled to use the facilities at her daughter's home a block away, and raw sewage accumulated in the yard). We conclude that the trial court did not err in admitting her testimony.

## IV. Betterment

■ ¶ 29 Even though Allied did not object to the instruction provided to the jury on betterment[2] as an element of damages, it now contends that the instruction was improper. We conclude the issue was not preserved for our review.

■ ¶ 30 Where a party fails to object to a jury instruction before the case is submitted to the jury, the party waives any claim of error due to that instruction. C.R.C.P. 51; *Day*, 255 P.3d at 1067. Allied cites its tendered betterment instruction,[3] which differed from the instruction adopted by the court,[4] as evidence of its objection. Before submitting the betterment instruction to the jury, the trial court asked both parties for their position on the proposed instruction. While the Hendrickses' counsel objected to the court's proposed instruction, Allied's counsel stated, "I think it's fine."

■ ¶ 31 In some circumstances, tendering a jury instruction is sufficient to preserve an argument for appeal. *See, e.g.,*

---

2. *Black's Law Dictionary* 182 (9th ed. 2009) defines "betterment" as: "1. An improvement that increases the value of real property; esp., an enhancement in the nature of an alteration or addition that goes beyond repair or restoration to a former condition."

3. Allied proposed the following instruction: "[To determine] the amount of damages, you should take into consideration the betterment, if any, to the plaintiffs' house and not award damages for such betterment. In this circumstance, betterment should be considered as an unearned increase in value to the house as a result of an improvement through no merit of the home owner [sic]."

4. The jury was instructed: "[I]n determining damages, you should consider [t]he reasonable cost of restoring the property. If the cost of repairs and any decrease in market value of the property as repaired [are] more than the market value of the property before the occurrence, your award shall be limited to the market value of the property before the occurrence."

*People v. Pahl,* 169 P.3d 169, 182 (Colo.App. 2006) (concluding that the defendant preserved assignment of error despite a failure to object to a jury instruction specifically, where the defendant tendered alternative instructions). This is so because the purpose of the objection rule "is to conserve judicial resources by alerting the trial court to a particular issue in order to give the court an opportunity to correct any error." *Id.* at 183. However, where, as here, the trial court requests input from the parties on the proposed instructions, and a party affirms that it has no objections to any of them, the party waives any claim of error based on the instructions. *See* C.R.C.P. 51; *People v. Vecellio,* 2012 COA 40, ¶ 31, —— P.3d ——, 2012 WL 866421; *Day,* 255 P.3d at 1067.[5]

¶ 32 Because Allied affirmatively agreed to the betterment instruction before the trial court submitted it to the jury, we conclude that Allied waived the issue for appeal.

## V. Award of Costs and Prejudgment Interest

### A. Costs

¶ 33 Allied contends that the trial court was required to grant its request for a hearing on the reasonableness of the Hendrickses' bill of costs. We disagree.

 ¶ 34 The Hendrickses filed a motion to amend the judgment to include $5,135.63 of costs. The bill of costs, filed concurrently with the motion, identified $521 in court fees, $860.13 in transcript fees, $2,261 in expert and lay witness fees, $200.10 in photocopies, $530.90 in charges for service of process or subpoena, and $762.50 for mediation. Allied requested a hearing to determine the reasonableness of the Hendrickses' submitted costs. Allied's motion, which also contested the Hendrickses' request for prejudgment interest, contained only the following two sentences about costs: "Defendant contests the reasonableness of the Plaintiffs' submitted costs. Defendant requests a hearing on this

issue pursuant to *Federal Ins. Co. v. Ferrell-gas, Inc.,* 961 P.2d 511 (Colo.App.1997)." The trial court denied Allied's motion, and awarded the Hendrickses their requested costs.

¶ 35 In *Federal Insurance Co. v. Ferrell-gas,* the division held that a party challenging the necessity and reasonableness of costs that cannot be validated by reference to any statute or fixed standard is entitled to an evidentiary hearing. *Id.* at 515. A party is not entitled to an evidentiary hearing to determine costs that are established by statute, such as filing, jury, and lay witness fees. *Id.*

¶ 36 The Hendrickses' bill of costs included costs that were statutorily allowed or otherwise subject to a fixed standard, as well as costs for expert witnesses that cannot be validated by statute or a fixed standard. Allied does not specify on appeal, and did not specify at trial, which costs it disputes or why the costs are unreasonable. We conclude the trial court did not abuse its discretion in denying the request for a hearing on costs where Allied did not specify which costs it contested, offered no reason for its challenge other than a bare statement that the costs were "unreasonable," and did not otherwise identify a fact issue to be decided at an evidentiary hearing. *See Thornton v. U.S. R.R. Retirement Bd.,* 109 F.3d 379, 382–83 (7th Cir.1997) (due process does not require a hearing if the record is barren of any issues of fact); *Front Range Home Enhancements, Inc. v. Stowell,* 172 P.3d 973, 976 (Colo.App. 2007) (trial court did not abuse its discretion in failing to conduct a hearing on attorney fees where plaintiff did not request a hearing until more than two weeks after the deadline and failed to specify the issues that necessitated a hearing); *cf. Roberts v. Adams,* 47 P.3d 690, 699–700 (Colo.App.2001) (explaining that a party is entitled to a hearing to determine a reasonable amount of attorney fees "at least when . . . it presents the affidavit of an expert on attorney fees raising

---

5. Only in rare instances, involving unusual or special circumstances, will an appellate court exercise its discretion to review, under a plain error standard, waived instructional error in a civil case. *Harris Group, Inc. v. Robinson,* 209 P.3d 1188, 1195 (Colo.App.2009); *Robinson v.* *City & Cnty. of Denver,* 30 P.3d 677, 685 (Colo. App.2000); *see also Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 586–87 (Colo.1984) (employing plain error standard in a civil case to an unpreserved instructional error). We find no exceptional circumstances here.

disputed issues of fact and a significant amount of fees has been requested").

### B. Interest

¶ 37 Allied contends that the trial court erred by awarding the Hendrickses prejudgment interest from the date their property was damaged. We disagree.

¶ 38 The trial court awarded prejudgment interest pursuant to section 5–12–102(1)(b), C.R.S.2011, which entitles creditors to recover interest "for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs."

¶ 39 Allied relies on *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825–30 (Colo.2008), and *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1173 (Colo. App.2010), to support its position that the trial court should have awarded interest from the date of the verdict. Allied's reliance on these cases is misplaced. Those cases hold that when damages are for the cost of repairs, interest accrues from the date repairs are made. *Goodyear*, 193 P.3d at 828; *Hildebrand*, 252 P.3d at 1173. In those cases, the juries returned special verdict forms, enabling the courts to calculate interest based specifically on the cost of repairs. Here, in contrast, the parties agreed to a general verdict form, and, while the jury was instructed on the cost of repairs, it was also instructed on diminution in value and noneconomic damages. Consequently, we cannot determine which portion of the verdict, if any, was for the cost of repairs. *See Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1029 (Colo. 2011).

¶ 40 The *Yeiser* court recently addressed the appropriate method for calculating prejudgment interest when a jury returns a general verdict that does not apportion damages between two measures of damages with different accrual dates. The *Yeiser* court explained that, "[b]ecause we lack any basis to distinguish between the amount of damages awarded for reasonable cost of repair and diminution in value, we affirm in general the trial court's method of calculating interest dating from the time that [the plaintiff's] house was initially damaged." The trial court's method of calculating interest here was consistent with the supreme court's holding in *Yeiser*, 247 P.3d at 1029. Therefore, we conclude that the trial court appropriately awarded prejudgment interest from the date the Hendrickses' house was initially damaged, which is also when any noneconomic damages began accruing.

¶ 41 The judgment is affirmed.

Judge TAUBMAN and Judge DAILEY concur.