24CA1543 Harris v Stallings 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1543
Larimer County District Court No. 22CV30740
Honorable C. Michelle Brinegar, Judge

---

David Harris,

Plaintiff-Appellant,

v.

Dustin Stallings; Premier Medical Corporation, a Colorado Corporation;
Lincare, Inc., a Delaware Corporation; Lincare Holdings, Inc., a Delaware
Corporation; and RCS Management Holdings Company, a Delaware
Corporation,

Defendants-Appellees.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

The Law Office of Sam Cannon, LLC, Sam Cannon, Megan McDonald, Fort
Collins, Colorado; Metier Law Firm, LLC, R. Todd Ingram, Michael W.
Chaloupka, Rebecca J. Fisher, Fort Collins, Colorado, for Plaintiff-Appellant

Montgomery Amatuzio Chase Bell Jones, LLP, Lori K. Bell, Taylor G. Ostrowski,
Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, David Harris, appeals the judgment entered against

defendants, Dustin Stallings, Premier Medical Corporation

(Premier), and Lincare Holdings, Inc (Lincare).[1]  We will refer to

Premier and Lincare collectively as "the employers."  We affirm the

judgment in part, reverse it in part, and remand the case with

instructions for further proceedings.

## I.     Background

¶ 2     Harris was injured when Stallings, driving his employer's

truck, turned left in front of Harris against the light and their

vehicles collided.  Harris sued Stallings and various corporate

entities he alleged were Stallings's employers.  His claims against

the corporate entities were based on both vicarious liability as

---

[1] Harris originally sued two other corporate entities — Lincare, Inc.,
and RCS Management Holdings Company (RCS).  No judgment was
entered against either of these entities.  The claims against Lincare,
Inc., were dismissed without prejudice by stipulation, and Harris's
later effort to reinstate those claims was rejected by the court, thus
making the dismissal with prejudice.  As to RCS, no evidence was
presented at trial about that entity, and the jury was not asked to
render any verdict on the claims against it.  Those claims have
therefore been abandoned.  *See Scott Wetzel Servs., Inc. v. Johnson*,
821 P.2d 804, 807-08 (Colo. 1991) (noting that the trial court's
having instructed on only one of several claims implicitly meant
that the remaining claims had been abandoned).

Stallings's employers and direct liability for negligent hiring, training, and supervision.

¶ 3      On April 19, 2024, after a five-day trial, a jury found in favor of Harris and awarded Harris $1.2 million in noneconomic damages and $75,000 in physical impairment damages. The jury found Stallings to be 5% at fault and found the employers, identified in the verdict form as "Premier Medical Corporation/Lincare Holdings, Inc.," to be 95% at fault for their negligent training and supervision of Stallings.

¶ 4      Several days later, Harris filed a motion for entry of judgment along with a proposed order of judgment that did not reduce the noneconomic damage award according to the statutory cap on such damages. *See* § 13-21-102.5(3), C.R.S. 2024. Specifically, Harris argued that the cap should be applied on a per defendant basis and that because Premier and Lincare were separate entities, the total award did not exceed the statutory cap. The employers objected, arguing that, because the parties had treated the employers as a single entity, the cap must apply to the single award as it relates to those companies.

2

¶ 5 On June 27, 2024, the trial court entered a signed, written order titled "Order Regarding Motion for Entry of Judgment" (the June order). In this order, the trial court agreed with employers and apportioned the judgment consistent with the jury's findings and applied the statutory cap to reduce the award against the employers. The June order stated that "[j]udgment shall enter" against defendants in a sum certain ($539,260 against the employers and $63,750 against Stallings) plus statutory interest. Further, the order stated that Harris was entitled to "interest on the aforesaid amounts of the verdict at the rate of 9% per annum from the date of the subject incident, December 23, 2019, until the judgment is paid." The court then instructed Harris to submit a new proposed order of judgment "consistent with the Court's findings and parameters."

¶ 6 Harris complied with that instruction on July 11, 2024, submitting a proposed order of judgment consistent with the June order. In this proposed order, Harris calculated the prejudgment interest through July 11, 2024. As drafted by Harris, the proposed order ended with "Judgment Enters on July 11, 2024." On July 16,

the trial court signed this proposed order without changes (the July order).

¶ 7 On August 29, 2024, Harris filed a notice of appeal identifying several orders he wished to appeal, including the June order and the July order, as well as a pretrial ruling denying his request to seek exemplary damages. He asserted that judgment entered on July 11, 2024, but was filed and served on the parties on July 16, 2024.

## II. Jurisdiction

¶ 8 We must first address our jurisdiction to hear this appeal.

¶ 9 After briefing was complete, this court issued an order directing Harris to show cause why the appeal should not be dismissed with prejudice for failure to file a timely notice of appeal.[2] The show cause order suggested that the June order was a final, appealable judgment because it met all the criteria of a judgment under C.R.C.P. 54(a) and 58(a): It was signed, written, and dated,

---

[2] As Harris notes in his response to the show cause order, defendants did not raise the timeliness of the appeal either in their briefs or through a motion to dismiss. However, "[w]e must determine independently our jurisdiction over an appeal, nostra sponte if necessary." *Allison v. Engel*, 2017 COA 43, ¶ 22, *overruled on other grounds by Wolf v. Brenneman*, 2024 CO 31.

and it resolved all issues of liability and damages. Thus, because Harris filed his notice of appeal more than forty-nine days after the entry of the June order, it appeared that the appeal was not timely filed.

¶ 10     In his response, Harris argues that the June order was not a final and appealable judgment under C.R.C.P. 58. First, Harris contends that the order did not reference C.R.C.P. 58 or say that judgment entered on that date. Second, the trial court's direction to prepare a proposed order of judgment would have been unnecessary if the June order were the judgment. And third, the clerk of the court did not enter the June order as a judgment in the register of actions. Alternatively, Harris argues that the court's actions and statements misled him as to the date of the entry of judgment and, thus, the deadline for his appeal. Accordingly, we should determine that his untimely filing was the result of excusable neglect and accept the filing under C.A.R. 4(a)(4).

¶ 11    After reviewing Harris's response, a motions division of this court deferred the determination of this court's jurisdiction to the division considering the merits of the appeal.[3]

¶ 12    Reviewing our jurisdiction de novo, *Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 15, we conclude that the June order was a final and appealable judgment, which Harris did not timely appeal; nevertheless, we further conclude that he has demonstrated excusable neglect for not doing so.  Consequently, we accept the appeal.

¶ 13    We begin by considering whether the June order was a judgment.  We conclude that it was.

### A.    Applicable Law

¶ 14    C.R.C.P. 54(a) defines "judgment" as "a decree and order to or from which an appeal lies."  C.R.C.P. 58(a) provides that "[t]he term 'judgment' includes an appealable decree or order as set forth in C.R.C.P. 54(a)."  Rule 58(a) also provides that

> [s]ubject to the provisions of C.R.C.P. 54(b),
> upon a general or special verdict of a jury . . .
> the court shall promptly prepare, date, and
> sign a written judgment and the clerk shall

---

[3] Though given the opportunity to file a response to the show cause order, no defendant did so.

enter it on the register of actions as provided in C.R.C.P. 79(a). . . . The effective date of entry of judgment shall be the actual date of the signing of the written judgment. The notation in the register of actions shall show the effective date of the judgment.

C.R.C.P. 79(a)(4) provides, "The notation of an order, or of the entry of judgment, shall show the date the order or judgment was ordered in open court, in chambers, or under the provisions of Rule 55 regarding default." C.R.C.P. 79(d) requires that the district court clerk "keep a judgment record in which a notation shall be made of every money judgment."

¶ 15 The court of appeals has jurisdiction over appeals from final judgments of the district courts. § 13-4-102(1), C.R.S. 2024. "[A] final judgment is 'one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings.'" *Chavez v. Chavez*, 2020 COA 70, ¶ 24 (quoting *People v. G.S.*, 2018 CO 31, ¶ 37). In other words, a final judgment is one that fully resolves liability and reduces damages (including prejudgment interest) to a sum certain. *Stone Grp. Holdings*, ¶ 18.

Prejudgment interest is reduced to a sum certain if it is easily calculable from the face of the judgment. *Id.* at ¶ 25.

¶ 16    The notice of appeal must be filed with the appellate court within forty-nine days after entry of the judgment or order being appealed. C.A.R. 4(a)(1). Rule 4 also provides that "[a] judgment or order is entered within the meaning of section (a)(1) and (a)(4) when it is entered pursuant to C.R.C.P. 58," and the time for the filing of the notice of appeal runs from the date of the mailing or electronic service of the notice of the entry of the judgment or order. C.A.R. 4(a)(5).

## B.    Analysis

¶ 17    The core issue is whether the June order was a final and appealable judgment. The order fully resolved liability. It reduced the jury's damage award to a sum certain. And it stated that prejudgment interest would run from the date of the incident and be calculated at 9% per annum. In other words, the prejudgment interest could be calculated from the face of the order. Thus, the June order met all the criteria of a final and appealable judgment.

¶ 18    Harris contends otherwise. As noted, Harris points out that the order did not state that judgment entered on that date; did not

reference C.R.C.P. 58; said "so ordered" as opposed to "judgment enters"; and used the future tense, "judgment shall enter," without specifying a date. Further, the court ordered him to prepare a "proposed order of judgment consistent with the court's findings" within fourteen days. Finally, Harris relies on the fact that the court clerk did not enter the June order in the register of actions as a judgment on that date.

¶ 19     Though true, none of these facts negates the finality of the June order. C.R.C.P. 58 does not require a judgment to explicitly invoke the rule itself, nor does it require any other particular language — and Harris points us to no authority that does. To the contrary, "[i]n determining whether an order is final, we look to the legal effect of the order rather than its form." *Luster v. Brinkman,* 250 P.3d 664, 666 (Colo. App. 2010). Nor is "judgment shall enter" necessarily a use of future tense. Indeed, while that language could be described as stilted legalese and a bit arcane, such language is commonly used at the time judgment is entered by trial courts throughout the state without precluding finality. *See, e.g., In re Parental Responsibilities Concerning M.B-M.,* 252 P.3d 506, 508-09 (Colo. App. 2011) (holding that the magistrate's signed minute order

9

saying, "[J]udgment shall enter" . . . in the amount of $1,500," was a final order that the magistrate lacked authority to alter with later ruling). Reading the court's language in this light, we disagree with Harris's contention that the order did not state that judgment entered.[4]

¶ 20 We acknowledge that the trial court created some confusion by asking Harris to prepare an unnecessary "proposed order of judgment consistent with the court's findings." But a superfluous order, even it titled "final judgment," does not abrogate the finality or appealability of a proper final judgment already entered. *See Stone Grp. Holdings*, ¶ 37 (concluding that order that reduced sanctions amount to a sum certain was the final order and subsequent order entering "final judgment" was superfluous).

¶ 21 Finally, Rule 58(a) provides that the effective date is determined by the date the written judgment is signed, and then that date shall be entered in the register of actions. It does not

---

[4] In light of our conclusion that the language of the June order satisfied all the elements of a judgment, we necessarily reject Harris's claim that E-Service of the June order on the parties (which the judicial department's case management system reflects occurred the day the order was entered) was not sufficient to trigger C.A.R. 4(a)(5)'s forty-nine-day clock for filing the notice of appeal.

work in the other direction. In other words, the date of the judgment entered in the register of actions does not determine the date of finality. Indeed, if an administrative failure to enter the judgment in the register of actions defeated finality, a party could be deprived of the opportunity to appeal merely because this purely ministerial task was not completed.

¶ 22    In sum, the June order was a final and appealable judgment. But that does not end our inquiry. Upon a showing of excusable neglect, we may extend the time for filing a notice of appeal by up to thirty-five days. C.A.R. 4(a)(4). "Excusable neglect involves a situation where the failure to act results from circumstances which would cause a reasonably careful person to neglect a duty." *Farmers Ins. Grp. v. Dist. Ct.*, 507 P.2d 865, 867 (Colo. 1973).

¶ 23    Here, we conclude the trial court's actions created sufficient confusion about the effect of the June order and the timing for filing an appeal such that a reasonably careful lawyer may nevertheless have been misled. Specifically, though there was no reason to do so, the court instructed counsel to prepare and submit a revised proposed order that would contain nothing more than what the court had just announced. Thus, it was reasonable for counsel to

believe that the order left something more to do, notwithstanding the fact that the June order met all the requirements of a final and appealable judgment. That confusion was then exacerbated by the court's purporting to enter judgment on a later date and by the court clerk's incorrectly indicating the date of judgment in the register of actions.

¶ 24    Thus, while in general "counsel has the obligation to determine in the first instance whether there is a final, appealable order, and should make that determination in a diligent and informed manner," *Chavez*, ¶ 36, the fact that counsel did not do so here is understandable. We therefore conclude that counsel's neglect in failing to file a timely appeal was excusable. And because the appeal was filed within the additional thirty-five days permitted under C.A.R. 4(a)(4), we exercise our discretion to extend the deadline for filing to the date the appeal was filed. Accordingly, we have jurisdiction over the appeal.

### III.   The Merits

¶ 25    Turning to the merits of the appeal, Harris asserts two claims. First, he argues that the trial court erred by treating the employers as a single entity when applying the statutory cap on damages.

12

Second, he contends that the trial court erroneously denied his request to amend the complaint to assert claims for exemplary damages against defendants. We address each issue in turn.

### A. Treating the Employers as a Single Entity

¶ 26 We conclude that Harris waived any challenge to treating Premier and Lincare as a single entity in this case.

### 1. Additional Background

¶ 27 Before trial, Harris moved for partial summary judgment, arguing that it was undisputed that, in addition to Premier, Lincare was also Stallings's employer. In response to the motion, the employers denied that Lincare was Stallings's employer. But the employers also recognized that the business relationship between Lincare and Premier may be confusing to the jury and stated that they were willing to stipulate that Premier and Lincare could be considered "one in the same."

¶ 28 Harris replied, opposing this language and proposing his own: "On July 23, 2018, Premier Medical Corporation and RCS Management Holding Company were acquired by Lincare Holdings, Inc. After the acquisition, each entity had the right to control Mr. Stallings's work. The parties agree that the entities are each

13

considered Mr. Stallings's employers for purposes of this case."  In addition to other reasons, Harris contended that this language would reduce jury confusion and allow the parties to "separately address" issues regarding the apportionment of liability and application of Colorado's noneconomic damages cap under sections 13-21-111.6, C.R.S. 2024, and 13-21-102.5.  The court concluded that there was a genuine dispute of material fact about who Stallings's employers were but nevertheless adopted the employers' proposed language.[5]

¶ 29     Harris filed proposed jury instructions, with special verdict forms, treating Lincare and Premier as two distinct defendants and asking the jury to apportion damages amongst (1) Stallings; (2) Premier; and (3) Lincare.

¶ 30     At trial, the court stated that it was redoing the jury instructions and verdict form.  The court said, "I don't know how you want to list the companies.  They shouldn't be listed separately.  They should be, like Lincare/Premier Medical.  I want to make it

---

[5] Notwithstanding the fact that the employers' language was a unilateral suggestion to which Harris objected and offered opposing language, the trial court characterized its ruling as "adopt[ing] that stipulation."

like, something like that." Harris's counsel responded, "You read our minds, your Honor, because we just agreed on that."

¶ 31 The next day, the court provided the parties with proposed instructions. The instructions repeatedly referred to "Defendant Premier Medical Corporation/Lincare Holdings, Inc.," and stated "both of the defendants Dustin Stallings and Premier Medical Corporation/Lincare Holdings, Inc." The instructions also asked the jury to determine the total amount of damages and what percent of damages were caused by the negligence or fault of "Defendant Dustin Stallings for his driving" and of "Defendant Premier Medical Corporation/Lincare Holdings, Inc. for its training and/or supervision of Dustin Stallings."

¶ 32 The court asked Harris's counsel if he wanted to make a record regarding the proposed instructions. Harris's counsel stated, "[W]e reviewed the instructions you e-mailed, and we do not object to any of the instructions you proposed giving."

2. Analysis

¶ 33 Defendants argue that Harris invited the error and thus cannot raise it on appeal. We disagree that Harris invited any error. He never asked for the two companies to be treated as a single

15

entity and objected to the language the trial court adopted as a mischaracterized "stipulation." Thus, it simply cannot be said that Harris "injected into the case" any error in this regard. *See Blakeland Drive Invs., LLP IV v. Taghavi*, 2023 COA 30M, ¶ 52.

¶ 34 However, Harris *waived* his right to complain about the error.[6]

¶ 35 When "the trial court requests input from the parties on the proposed instructions, and a party affirms that it has no objections to any of them, the party waives any claim of error based on the instructions." *Hendricks v. Allied Waste Transp., Inc.*, 2012 COA 88, ¶ 31.

¶ 36 Harris's counsel agreed to the instruction and the verdict form proposed by the court treating Premier and Lincare as one entity. This instruction and verdict form explicitly asked the jury to allocate damages between only Stallings and the employers; the jury was never asked to allocate the percentage of responsibility between Premier and Lincare. By not objecting to the instruction or

---

[6] Although the employers do not argue waiver, we have an affirmative, independent obligation to determine whether a claim of error was preserved. *See Gomez v. Walker*, 2023 COA 79, ¶ 25 n.6.

the verdict form, Harris waived any appellate challenge to the issue of treating the employers as a single entity. *See id.* at ¶ 32.

¶ 37 "[W]aiver extinguishes error, and therefore appellate review . . . ." *People v. Rediger,* 2018 CO 32, ¶ 40. Because he waived this issue, Harris cannot now argue that the trial court erred by not treating Premier and Lincare as two distinct entities when applying the damages cap in section 13-21-102.5(3)(a). *See Gen. Elec. Co. v. Niemet,* 866 P.2d 1361, 1362 (Colo. 1994) (holding that the cap in section 13-21-102.5 applies to the liability share of each defendant in a case). We thus decline to address this argument further.

### B. Request to Add Exemplary Damages Claims

¶ 38 Harris next contends that the trial court erred by denying his motion for leave to amend his complaint to add exemplary damages claims. We agree.

### 1. Additional Background

¶ 39 Harris filed a motion for leave to amend the complaint to add claims for exemplary damages under section 13-21-102, C.R.S. 2024. He alleged that his injury was attended by circumstances of fraud because Stallings testified that he did not receive any training

from the employers after his initial onboarding; however, the training logs showed that Stallings had completed additional training, and Premier testified that those logs were accurate and that Stallings had completed numerous training courses during his employment. He argued that based on this contradictory evidence, either Stallings lied to his employers about his level of training, or the employers committed fraud by falsifying a record of Stallings's training history.

¶ 40   Harris further alleged that Stallings acted willfully and wantonly by failing to take an alcohol or controlled substance screening test within the time required by the employers' policies and federal regulations. Harris argued that this would support an inference that Stallings must have been intoxicated at the time of the incident.

¶ 41   Harris also alleged that the employers' conduct was willful and wanton because they knew Stallings was an unsafe driver. Specifically, Harris claimed that Premier knew of a prior accident in which Stallings was following the car in front of him too closely and was distracted by his cell phone, yet the company took no action in response to this accident. He alleges that Premier obtained

18

Stallings's driving record twice and that both times it stated, "MVR NOT CLEAR," but the company took no action. And he alleges that Premier did not report the earlier accident (because it did not appear on Stallings's driving records) and that this failure to report prevented Lincare from learning about the accident.

¶ 42 Finally, he alleged the employers required Stallings to work an illegal schedule leading up to this incident in violation of federal law.

¶ 43 Harris later supplemented his motion with an internal email between Lincare's Safety Administrator for Vehicle Accidents and Stallings's supervisor, in which the supervisor was told, "We can't con[ti]nue to put the Public or Lincare in Harm's way by our driver[']s reckless behavior and driving habits." Harris also included a monthly report, which provided insight into Stallings's driving habits during the month of the incident, including that he harshly cornered 119 times.

¶ 44 Defendants objected to Harris's request to add exemplary damages claims. As to Stallings's training records, they pointed to contrary evidence, including deposition testimony that Stallings did not recall if he took certain trainings, documents that showed

19

Stallings did take those trainings, documents showing Stallings filled out an accident report after the prior incident and was assigned and completed additional training, logs showing the number of hours Stallings worked leading up to the incident, and documents showing how much vacation Stallings took leading up to the incident. Defendants also contended that Harris miscited the employers' policies and federal regulations.

¶ 45 The trial court denied the motion, finding that

> Plaintiff has shown no prima facie evidence to support adding a claim for exemplary damages. Plaintiff has not established facts in which "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." C.R.S. § 13-21-102(1)(a). Plaintiff solely offers argument and speculation to support its position. That is insufficient. Therefore, the Court denies the motion on those grounds alone.

### 2. Standard of Review and Applicable Law

¶ 46 "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007). The trial court's ruling will not be disturbed unless we determine that the trial court abused its

discretion.  *Id.*  "A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or is based on a misapprehension or misapplication of the law."  *In re Estate of Chavez*, 2022 COA 89M, ¶ 19.  "A trial court necessarily abuses its discretion if its ruling is based on an incorrect legal standard. Whether the trial court applied the correct legal standard is a question of law we review de novo."  *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 2012 CO 30M, ¶ 12.

¶ 47    "Prima facie proof of a triable issue of exemplary damages is established by 'a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution.'"  *Stamp*, 172 P.3d at 449 (quoting *Leidholt v. Dist. Ct.*, 619 P.2d 768, 771 n.3 (Colo. 1980)).  "Such proof may be established through discovery, by evidentiary means, or by an offer of proof."  *Id.*  "Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact."  *Id.*  The "prima facie proof" requirement is a "lenient standard."  *Id.* at 450.  In assessing whether the requisite prima facie showing has been made, we view the evidence in the light most favorable to the moving party to determine whether a reasonable fact finder could find for the moving party.  *Cf. Boryla v. Pash*, 960

P.2d 123, 126-27 (Colo. 1998) (in assessing whether a party has made out a prima facie case sufficient to withstand a motion for directed verdict, the court considers all of the facts in the light most favorable to the nonmoving party to determine whether a reasonable jury could have found in its favor).

¶ 48   When actual damages are assessed by a jury, the jury may also award reasonable exemplary damages "for a wrong done to the person or to personal or real property" if the injury is "attended by circumstances of fraud, malice, or willful and wanton conduct." § 13-21-102(1)(a).  "[W]illful and wanton conduct" is conduct that is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b).

¶ 49   "The injured party need prove only 'circumstances of fraud' surrounding a tortious act resulting in damages." *Amber Props., Ltd. v. Howard Elec. & Mech. Co.*, 775 P.2d 43, 46 (Colo. App. 1988). "The elements of 'circumstances of fraud' are identical with the necessary elements of fraud." *Id.* (citing *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984)).  "Fraud generally consists of a false

representation of a material existing fact, made with knowledge or utter disregard of its falsity, with the intent to induce another to rely upon the representation and to take detrimental action thereon." *Palmer*, 684 P.2d at 214-15.

### 3. Analysis

¶ 50 When requesting permission to add exemplary damages claims, Harris submitted deposition testimony and documents, including emails and driving data reports. He alleged specific facts that, if true, could support inferences of fraudulent acts and willful and wanton behavior.

¶ 51 The trial court recognized that prima facie proof of a triable issue of exemplary damages can be established through discovery, by evidentiary means, or by an offer of proof showing a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution. The court also stated that the evidence must be viewed in the light most favorable to Harris and that the standard for establishing a prima facie case is lenient.

¶ 52 Yet, notwithstanding its correct recitation of the analytical rubric, the trial court concluded that Harris solely offered argument and speculation to support his position. The court denied the

motion "on those grounds alone."[7]  In doing so, the court did not apply the lenient standard it had just recited.  Moreover, in order to reach that conclusion, the trial court necessarily conducted some level of factfinding and resolved conflicts in the evidence to conclude that Harris's position was speculative.  *Cf. Boryla*, 960 P.2d at 126-27.  This is a misapplication of the legal standard.

¶ 53    Contrary to the trial court's analysis, Harris presented sufficient evidence to establish "a reasonable likelihood that the issue w[ould] ultimately be submitted to the jury for resolution." *Stamp*, 172 P.3d at 449 (quoting *Leidholt*, 619 P.2d at 771 n.3).[8] Thus, the trial court should have granted Harris's motion to amend the complaint to add exemplary damages claims against Stallings and the employers and to allow the jury to resolve the competing evidence and inferences therefrom.  We thus remand for a trial

---

[7] Defendants argued that Harris's motion for leave to amend the complaint was filed after the deadline for such motions established in the case management order.  Harris had acknowledged that fact in his motion but asserted that the tardiness was created by defendants' numerous delays in complying with discovery.  The court did not consider the motion untimely, noting that the trial had been reset, and thus, "untimeliness [wa]s no longer a factor."
[8] We, of course, express no opinion on whether Harris's claim for exemplary damages will ultimately be successful.

solely on the exemplary damages claims.  *See Amber Props., Ltd.*, 775 P.2d at 47.

IV.   Disposition

¶ 54     The judgment for actual damages is affirmed.  The order denying Harris's motion to amend the complaint to add exemplary damages claims is reversed.  The matter is remanded with instructions (1) to amend the register of actions to reflect entry of the actual damages judgment on June 27, 2024; and (2) to conduct a trial on Harris's claims for exemplary damages only.  At trial, the court shall advise the jury about the nature of Harris's claims; that the liability of Stallings and the employers pursuant to those claims, including the pro rata allocation of fault, has been determined; and that actual damages have been awarded on each of the claims, including the amount of each award, and it shall instruct the jurors only on the law relating to the issues concerning exemplary damages.

JUDGE YUN and JUDGE SULLIVAN concur.

25